# Georges Township *v.* Union Trust Co., Appellant.

*Townships — Indebtedness — Borrowing money — Second-class townships—Current revenues—Act of July 14, 1917, P. L. 840—Banks—Affidavit of defense—Exhibits—Notes in plaintiff's hands.*

1. Generally, a township, like any other municipal or quasi municipal body, may act only through powers that have been conferred on them by the legislature, or by necessary implication of power associated with a given function.

2. When a municipality desires to create a debt or borrow money, there must be some antecedent legislative authority either direct or implied from the necessity of performing a duty which must involve the spending of money.

3. Second-class townships are not clothed with the general powers given to cities, boroughs and first-class townships; but, within their specific functions, their authority is equal to other municipalities.

4. The limitations on all municipalities to the power to create a debt or borrow money are as follows: First, there must be a lawful purpose for which the money is to be used or the debt created, and, second, the amount which can be borrowed is determined by reference to (a) the current revenues due or created within the year, and (b) the constitutional percentage authorized on the assessment value of property.

5. The procedure necessary to give effect to the borrowing power is not an incident of the power, but a regulation for its proper exercise.

6. The purpose for which money is to be used, or a debt is to be created, may be ascertained from authorizing acts, or duty enjoined or necessarily implied therefrom.

7. Promissory notes given for loans incurred for the repair and improvement of public roads is a proper exercise for which money can be borrowed, or a debt created, if the notes are valid obligations in other respects.

8. Money borrowed for current expenses must be a sum within current revenues.

9. Current revenues include for the ensuing year all liquid assets such as delinquent taxes, licenses, fines, and other revenues which in the judgment of the authorities are collectible.

10. Current expenses have first claim on ordinary revenue and contemplate operating expenses, such as repair and maintenance of highways, lighting streets and other like ones.

11.. Permanent improvements should not be paid out of current revenue or the receipt of taxes levied for current purposes; but if the levy is fixed by law, and there is a balance of current revenue over expenses and lawful loans made on account of such expenses, there is no reason why such a surplus should not be used for improvements.

12. Section 426 of the Act of July 14, 1917, P. L. 840, does not have the effect of authorizing debts beyond present revenues, except in cases of extraordinary emergency and those under section 436.

13. Section 436 must be confined to its proper subject-matter, which provides for work to be done to secure state reward for maintenance of township roads.

14. Where a debt created in any year exceeds current revenues, and cannot be paid therefrom, the debt is void unless steps are taken to pay by bonds under the constitutional provision.

15. If the contracts do not overreach the current revenues, no objection can be made to them, however great the indebtedness.

16. Where notes are given to a bank to secure a loan for repair of roads, and such loan is valid within the current revenues, the fact that one or more of the notes are renewal notes, is immaterial if the original notes were validly created.

17. Permanent improvements are usually made from loans in the constitutional class.

18. A debt may be incurred or money borrowed by a municipality without electoral approval up to two per cent, and the form of such indebtedness is coupon bonds or other securities which would include notes or certificates of indebtedness.

19. In an action against a township on its notes given for loans, and the validity of the notes is not denied in the pleadings, the presumption will be that the supervisors as public officers had regularly performed their duties, and that the loans were made within current revenues or in the constitutional class.

20. Where money is deposited by a township in a bank, the bank should be notified if the fund is intended to be earmarked for a designated township use; if this is not done the bank may apply such deposit toward the payment of township notes given to secure valid loans.

21. While expenditures for purposes within section 421 of the Township Act should not exceed the gross sum produced by the millage laid for that purpose, this fact will not be sufficient to charge the bank with notice, unless there had been a specific separation or appropriation of deposits in the bank.

22. Where funds are deposited in a bank as township funds the bank takes them as such without responsibility as to appropriations by the taxing authorities.

23. Any writing signed by the proper township authorities, directing money to be paid or agreeing to pay presently or in the future, will be an order within the contemplation of the statute.

24. It will not be an invalid payment merely because it was made on a blank not provided by the state highway commissioner, as provided by section 287 of the Township Code, or if money lawfully due, was paid without such order.

25. Where a township debt has been lawfully contracted and an imperfect order or direction for payment given, the supervisors may later ratify the payment on such order.

26. In an action by a township against a bank to recover deposits alleged to have been improperly applied by the bank to the payment of notes representing loans from the bank to the township, the plaintiff cannot allege that the notes and resolutions of the authorities relied upon by the bank in its affidavit of defense, are not set forth therein, where such papers are in the possession of the plaintiff.

Argued March 13, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 48, March T., 1928, by defendant, from order of C. P. Fayette Co., March T., 1927, No. 883, making absolute rule for judgment for want of sufficient affidavit of defense, in case of Georges Township v. Union Trust Co. of Uniontown. Reversed.

Assumpsit to recover amount of bank deposit.

Rule for judgment for want of sufficient affidavit of defense. Before MORROW, J.

The opinion of the Supreme Court states the facts.

Rule absolute. Defendant appealed.

*Error assigned,* inter alia, was order, quoting record.

*H. S. Dumbauld,* with him *Sterling, Higbee & Matthews,* for appellant.—There was no legislative intent and no purpose to render township funds unavailable

for the discharge of its obligations: State v. Bank, 71 N. W. 1011; Commercial Nat. Bank v. Henninger, 105 Pa. 496.

*A. E. Jones,* of *Jones, Whitehill & Lane,* for appellee. —The proceeds of the 1925 and 1926 tax duplicates in the hands of, or on deposit by, the treasurers of appellee with appellant, were trust funds,—public money in the hands of township officers for a definite and specific purpose, of which trust relationship the bank had notice.

The adoption of an annual budget by the township supervisors in accord with this section of the act is an appropriation of the current revenues for the year: Citizens Nat. Bank v. Alexander, 120 Pa. 476.

It has been considered that, where a deposit is impressed with a trust, the bank cannot retain it on the doctrine of equitable set-off: Smuller v. Canal Co., 37 Pa. 68; First Nat. Bank v. Peltz, 176 Pa. 513; Wilson v. Huntingdon Co., 7 W. & S. 197.

A township has no general power to borrow money; if these notes were valid obligations in 1926, subsisting valid debts at that time, then this township exercised a general power to borrow money: Potters Nat. Bank v. Twp., 260 Pa. 104; Good Roads Machinery Co. v. Twp., 25 Pa. Superior Ct. 156; Trevorton Water Supply Co. v. Twp., 259 Pa. 31.

Appellant should not have loaned the money to appellee; it should have collected the loans out of the current revenues of the year 1922: Citizens Nat. Bank v. Alexander, 120 Pa. 476.

OPINION BY MR. JUSTICE KEPHART, May 21, 1928:

The township sued to recover from defendant a bank deposit of $20,181.28, with interest from February 28, 1927. This sum had been deposited in the name of Georges Township Road Supervisors by their treasurer, named as of the year in office. Defendant, in its affidavit of defense, answered that plaintiff was indebted

to it in the sum of $7,000, evidenced by its note or certificate of indebtedness, dated June 30, 1922, which amount was charged against plaintiff when its account was balanced. The note or certificate was surrendered, together with other orders and checks and charged against the plaintiff's account. The indebtedness was incurred by the township for its corporate uses and purposes,—to repair and improve roads,—the money having been borrowed on the credit of the township in anticipation of taxes then to be collected. The loan and the note were authorized by resolution of the supervisors regularly enacted, and the charge against the bank account was with the knowledge, consent and agreement of its supervisors. Like defense was made for another note of $10,000, held by defendant; both notes with interest charges reduced plaintiff's balance to $58.53, which sum was admitted to be due. Plaintiff moved for judgment for want of a sufficient affidavit of defense. The court directed judgment for the plaintiff for the following reasons, (1) a previous appropriation and an earmarked fund which could be drawn from the bank only on an order (which was not given) and for the purpose for which the money was raised, and (2) the pleadings did not contain copies of the exhibits relied on. The motion also charged that the certificates or notes did not evidence legal obligations payable by plaintiff.

Because of the scope of the pleadings and the positions assumed in the motion, with the action of the court thereon, it will be necessary to discuss briefly the law with respect to the financial affairs of townships of this class. The first inquiry, naturally, is whether the notes are valid obligations, given under competent authority.

Generally speaking, a township, like any other municipality or quasi municipal body, may act only through powers that have been conferred on them by the legislature, or a necessary implication of power associated with a given function. When a municipality desires to

create a debt or borrow money, there must be some antecedent legislative authority either direct or implied from the necessity of performing a duty which must involve the spending of money. The Township Code of 1917, P. L. 840, section 385, defines generally the powers of townships, and confers the power "to make any contract necessary to carry into execution the provisions of this act." This merely restates the law as it existed prior to the act.

Second-class townships are not clothed with the general powers given to cities, boroughs and first-class townships. Consequently, this general power to borrow money is limited by the code and other legislation. But within their specific functions, however, their authority is equal to other municipalities.

The limitations on all municipalities to the power to create a debt or borrow money are as follows: First, there must be a lawful purpose for which the money is to be used or the debt created, and, second, the amount which can be borrowed is determined by reference to (a) the current revenues due or created within the year, and (b) the constitutional percentage authorized on the assessment value of property. The procedure necessary to give effect to the borrowing power is not an incident of the power, but a regulation for its proper exercise. The purpose for which money is to be used, or a debt is to be created, may be ascertained from the authorizing acts, or duty enjoined or necessarily implied therefrom. In this case it is alleged that the notes were given for loans incurred for the repair and improvement of public roads. This is a proper purpose for which money can be borrowed, or a debt created, if the notes are valid obligations in other respects as well.

Money borrowed for current expenses must be a sum within the current revenues. Current revenues include taxes for the ensuing year and all liquid assets, such as delinquent taxes, licenses, fines and other revenues which, in the judgment of the authorities, are collectible.

Current expenses have first claim on ordinary revenue and contemplate operating expenses, such as repair and maintenance of highways, lighting streets and other like ones. The sections of the code authorizing the levy of taxes (sections 421 and 422) would seem to indicate that, except as there mentioned, permanent improvements should not be paid for out of current revenues or the receipt of taxes levied for current purposes. But, if the levy is within that fixed by law, and there is a balance of current revenues over expenses and lawful loans made on account of such expenses, there is no reason why such a surplus should not be used for permanent improvements: Ackerman v. Buchman, 109 Pa. 254. The code specially excludes a levy for the last named expenditures, except in designated instances.

Section 422 of the code makes it possible, through the court of quarter sessions, to levy a special tax for a debt that has been contracted exceeding in amount the revenues which the supervisors may collect in any year by taxation. This might be construed as being an implied authority to create a debt in any year beyond the current revenues, but, as this is a redraft of the Act of 1864, P. L. 162, it would not disturb the decisions under that act, hereinafter discussed. Except in cases of extraordinary emergency, and those under section 436, the provision of this section would not have the effect of authorizing debts beyond present revenues.

Section 436 of the code states that, when township highway funds have been exhausted, the supervisors may issue certificates of indebtedness and borrow on the credit of the township in anticipation of taxes to the end that the work may be performed in the proper season. This section must be confined to its proper subject-matter, which provides for work to be done to secure state reward for maintenance of township roads. The work is seasonal, and the borrowing power is limited to (1) 2% of the valuation, and (2) revenues or taxes contemplated or anticipated in the current year. It did not

intend to appropriate all future revenues, and such revenues taken should be specifically named: McAnulty v. City of Pittsburgh, 284 Pa. 304. As thus understood, the borrowing power under the section has not been extended.

It was early stated that, where the debt created in any year exceeded current revenues, and could not be paid therefrom, the debt was void unless steps were taken to pay by bonds under what is termed the constitutional provision. The Constitution was intended to prevent the citizens from being overburdened by municipal taxation: City of Erie, 91 Pa. 398. It would be rather dangerous to announce as a principle that the ordinary running expenses should be cared for by bonds. If the tax power is impotent to bring sufficient revenue for that purpose, the constitutional limit would be quickly reached. The legislature has safeguarded current revenues from the burden of permanent improvements which would overburden taxpayers, by placing limits on the taxing power.

As illustrating the limitations on borrowing or creating a debt within revenue limits, and the difference between running expenses and permanent improvements, the following cases may be cited: In City of Erie, supra, a city leased a market house for 25 years at a given sum per year. Apparently, the rent could not be paid from the current revenue. The court said the municipality must learn to live within its revenues. When a contract made by the municipality pertains to its ordinary expenses within the limits of its current revenue, then such special tax as it may legally and in good faith levy for such contract does not constitute the incurring of indebtedness within the constitutional provision. *If the contracts do not overreach the current revenues, no objection can be made to them, however great the indebtedness may be.* But since it did not appear from the record that the contract in question was within the current revenues, and could not be sustained

within the constitutional levy, it was held void. In Wade v. The Borough, 165 Pa. 479, the contract was for lighting the streets of a borough, extending over a period of seven years. It was considered as an operating expense, payable monthly within current revenues, even though it did continue for a period of years, and, in the aggregate, imposed a charge in excess of current revenues. It was a continuing contract requiring a duty to be performed by both parties during each year. In Brown v. Corry, 175 Pa. 528, the municipality attempted to buy water works on the payment basis indicated in the last case, limiting payment, however, to a fund derived from the sale of water. What the municipality undertook to do was to acquire a capital asset, using this method of payment to meet the constitutional objection. The court held it could not do so, for the reason that, after the transfer of title, there was no further obligation resting on the vendors. "Debt" was there defined as a "contractual obligation to pay in the future for a consideration received in the present." See Keller v. Scranton, 200 Pa. 130. To the same effect is Lesser v. Warren Boro., 237 Pa. 501. Running expenses are confined to revenues, and the latter should not include permanent improvements. Borrowing for those expenses should be within those revenues.

An exception to this rule was expressed in Addyston Pipe & Steel Co. v. City of Corry, 197 Pa. 41, by Justice MITCHELL. In that case there was a failure of expected revenues. We held, if, at the time, the debt was lawfully within the power of the municipality, the fact that it later, through circumstances, is shown not to be, does not destroy the obligation. "There is no constitutional restriction on municipal expenditure provided it is paid as it goes......If the city has the money on hand or provides at the time a present means of raising it otherwise than by loan, it may contract for expenditure without restriction......The contract entered into on the faith of them should not be held unlawful on account of

an unintentional miscalculation, or an accidental and unexpected failure to produce the full results." This principle was used to sustain a claim from current revenues in Potters National Bank v. Ohio, 260 Pa. 104, and in Schilling v. Ohio Twp., 260 Pa. 113. It was not successfully invoked when a similar claim was present in Jackson v. Conneautville Boro. Sch. Dist., 280 Pa. 601.

Applying the foregoing principles as to current revenue to the facts in this case, it will be seen that many situations are present under any one of which the notes may be sustained. If the loan for which the notes were given was made for repairs to roads, within the current revenues, and the answer avers that it was, it is evident the note would be valid, as there is nothing else in the record to show that the loans exceeded such revenues. The fact that one or more of the notes were renewals of a prior one would not make the renewal notes invalid if the original note was lawfully created. As stated in Addyston Pipe & Steel Co. v. City of Corry, supra, "The validity of the obligation is to be determined at the time it was made."

The answer also avers that the loans were for improvements. This brings up consideration of (b) or the constitutional percentage. Money borrowed or debts created for permanent improvements, such as improved roads or public buildings, must not exceed the constitutional limit. "Permanent improvements," as the term is ordinarily understood, are usually made from loans in the constitutional class. The deposit, for all that appears in plaintiff's statement, might well be from such loan. The Act of April 28, 1915, P. L. 195, governs the two per cent limit loans in that class. A debt may be incurred or money borrowed by resolution without electoral approval for any lawful purpose up to two per cent. The form of this indebtedness is coupon bonds or other securities, which would include notes or certificates of indebtedness, and the regulations set forth in the act

should be complied with: Boro. of Rainsburg v. Fyan, 127 Pa. 74.

The affidavit does not show the class of the indebtedness, but avers that it was incurred for corporate purposes by resolutions duly enacted. Whether the loan is within current revenues or in the constitutional class, the validity of the loan is not denied in the pleadings, and the presumption would be that the township supervisors, as public officers, had regularly performed their official duty in issuing the notes: Vernon Twp. v. United Natural Gas Co., 256 Pa. 435; Jefferson Co. v. Rose Twp., 283 Pa. 126, 130. The court may well rest on this presumption, and, until it is overthrown, the notes stood as valid obligations, and judgment for this reason could not be entered against defendant. As stated in Addystone Pipe & Steel Co. v. City of Corry, supra (page 47), here a city "seeks to escape payment on the ground that its contract was ultra vires; if this is true, the overruling requirements of public policy compel us to hold the defense good in law, however unjust and dishonest in morals. But the invalidity of the contract should be clearly established, and the burden of showing it is on the city."

Was there a prior appropriation of the money on deposit? The weakness in plaintiff's case comes from its statement: Parry v. Bank, 270 Pa. 556. Outside of the general deposit to the credit of the township's treasurer, the statement nowhere avers that the funds on deposit were allocated to any appropriation or for any special purpose, or that they were from any particular source. It was merely money on deposit for the use of the township. If it was intended to be an earmarked fund for a designated township use, the bank should be notified. The money could have come from many sources. Township money, like other municipal funds, when collected, is turned over to the treasurer. The act does not direct where the money shall be kept. For his convenience, the money is deposited in a general account to the credit of

the township.   As deposited, no private debt of the
treasurer could be charged against it.   The mere fact
that section 421 individuates the purposes for which
taxes are collected (road, lighting, building, town house
and lock-up), would not charge the bank with notice nor
earmark a fund deposited with it, as other sections indi-
cate that the deposit might have been to meet debts that
were due, including the notes in question.   While ex-
penditures for purposes within the taxing section (sec-
tion 421) should not exceed the gross sum produced
from the millage laid for that purpose, this fact would
not be sufficient to charge the bank with notice, unless
there had been a specific separation or appropriation of
deposits in the bank.   Municipal money from all sources
is usually deposited in a general account, and is used
indiscriminately by the treasurer to apply to orders or
demands for all purposes.   The responsibility for the
proper distribution and disbursement under any budget
system must rest on the authorities who control and pay
it out.   These officers or their bondsmen must answer
for any misapplication of funds, unless there is knowl-
edge in the one receiving them as to an illegal appropria-
tion.   Tradesmen, workmen or employees dealing with
township authorities for matters ordinarily within cur-
rent expenses are not charged with the duty of ascer-
taining whether there is an appropriation to cover the
service or whether they are being paid from the proper
appropriation.   Appropriations are made on the town-
ship books by the distributing and accounting officers;
this is indicated by section 420, which requires an esti-
mate of possible expenses.   Therefore, funds deposited
as here, qua funds, are not appropriated in the hands of
the bank, and the bank takes them without responsibil-
ity as to appropriations made by the taxing authorities.
The former may treat this fund as any other fund, and
charge it with a municipal order in its possession for
collection in the same manner as it may charge an in-
dividual or corporation: Commercial National Bank v.

Henninger, 105 Pa. 496. Considering the thousands of
orders that are so issued, it would impose too much bur-
den on the banks and destroy the flexibility of this char-
acter of exchange if they were required to hunt up the
treasurer and secure a check or authority from him to
honor each one, depending on the accounts as they may
or may not be shown by his books. If there should be
any doubt as to the propriety of any charge, or the rule
here laid down, the treasurer may guard against it by
restricting the deposit in the bank to certain appropria-
tions made by the supervisors.

The act requires money to be paid out by the treasurer
on orders signed by at least two supervisors. Many of
these orders pass through the banks as checks. The or-
der in strictness is addressed to the treasurer who, when
they are presented to him, issues his own check in favor
of the persons or the banks who may hold them, to cover
the amount called for therein. There is nothing in the
act which defines what the order shall contain, but the
Township Code in section 287 states that the state high-
way commissioner shall furnish blanks. This is a re-
draft of legislation in effect since the Act of 1834, P. L.
537, the part under discussion coming from the Act of
June 11, 1915, P. L. 947. Any writing, signed by the
proper authorities, directing money to be paid or agree-
ing to pay presently or in the future, would be an order
within the contemplation of the act. It would not be an
invalid payment merely because payment was made on
a blank not issued by the state highway commissioner,
or if money lawfully due was paid without such order.
We do not have before us the form of the note or certifi-
cate of indebtedness, but, if it was in the usual form, we
see no reason why it should not measure up to the stand-
ard required. Assuming the note measured to the dig-
nity of an order, judgment should not have been entered
because of the failure to produce an order. Moreover,
in this case the township authorities, when the books
were balanced, recognized the notes as being a sufficient

order, accepted, approved and ratified them. Where a debt has been lawfully contracted for and an imperfect order or direction for payment given, the supervisors may later ratify the act of payment. It was when the new board of supervisors took office that these matters, extending over years, were questioned.

Another question should be touched on, though not specifically raised, but we will not decide it. The code provides for auditors who audit the accounts of these officers. The notes, or some of them, have been in existence for years. If there has been an illegal act or irregularity, why was it not determined long ago? The law adopts its own procedure to safeguard the funds of a municipality through surcharge of the officer responsible, with recourse to his bondsman. Should this proceeding have been against such officers, and, if this action can be maintained, may any employee engaged in repairing roads, tradesmen who sell articles for that purpose, and banks who furnish money to meet such demands, be called on to repay, rather than a proceeding against the officer and his bond? The record is in no shape for us to decide the question. Of course, if the bank, without justification or reason, unlawfully withholds money, a matter that could not properly come before auditors, it cannot keep the money, and the township may sue for it. But that is not the case, as the present record discloses.

Complaint is made that a copy of the resolutions, together with other matters necessary to make a valid loan, are not attached as exhibits by defendant in his affidavit; neither are the notes. Under the Practice Act of May 14, 1915, P. L. 483, it was necessary for him to attach to his pleadings copies of all contracts, etc., on which he relies for his claim, but it is not necessary to attach copies or other papers merely referred to but not essential to his cause of action: Harper v. Lukens, 271 Pa. 144, 147. Where a paper is an important factor in a case and defendant attempts to set up his interpretation

of it as a defense to an action or draws therefrom a defense, he must attach a copy to his affidavit: Hebb v. Insurance Co., 138 Pa. 174, 180; Derr Lumber Co. v. Johnson, 75 Pa. Superior Ct. 605. This objection would be a formidable one in the present case, but it is to be remembered that when these accounts were settled the notes were delivered to plaintiff; they are in its possession as are the resolutions on the minutes likewise. The affidavit excuses defendant's failure to set them up because of these facts. The purpose of the act is merely to simplify practice; it was not to require plaintiff to embrace in its statement what in the very nature of the particular case he could not know with accuracy, and the knowledge of which was wholly in the power of his adversary: Murdock v. Martin, 132 Pa. 86. As a general rule, a party will not be required to furnish information which is peculiarly within the knowledge of the party demanding the particulars. This rule is correctly stated in Crew v. P. R. R. Co., 1 Pa. Dist. Rep. 82, and it is usually deemed a sufficient excuse for omitting copies of exhibits from pleadings to aver that the instrument is lost or is in the possession of the opposite party: 31 Cyc. 558. Plaintiff asks for judgment because the pleadings do not contain sufficient information to enable it to properly present its case, while all the time the same information is in its possession. If plaintiff is correct, all that would be necessary would be to get hold of the written evidence relied on and a meritorious defense might be blocked. This is not a correct view to take. The court should not have directed judgment because of this.

In passing on the subject of borrowing powers and debts, we call attention to the Act of May 4, 1927, P. L. 707, section 421. As the case now stands, the question presented is for the jury. It does not show either conspiracy or any wrongdoing so far as the present record stands. The pleadings may be amended so as to raise the issues relied upon by plaintiff, and defendant has a

similar right to amend. The case was certainly not one for summary judgment.

The judgment is reversed with a procedendo.