# Shamokin Banking & Trust Co. v. Coal Township Poor District.

J. A. Welsh and S. L. Gribbin, for plaintiff.

Cummings & Gubin, C. C. Lark and John Kopyscianski, for defendants.

STRAUSS, P. J., Aug. 14, 1929.—This matter is before us on bill, answer, replication and proofs.

The bill avers that the plaintiff is a taxpayer and creditor of the defendant district and alleges that defendants, in a derogation of the rights of the plaintiff, had unlawfully increased the indebtedness of the said district in the year 1928 and were contemplating a similar unlawful increase of the indebtedness of the district in the year 1929, and prays that an injunction, preliminary until hearing and final thereafter, be issued restraining the defendants from applying any of the moneys in their hands to the payment of such indebtedness unlawfully incurred or to be incurred. A preliminary injunction was issued, a hearing had and testimony taken. It was agreed that the testimony should be considered as of final hearing. From the testimony the Chancellor finds the following facts:

1. The plaintiff is a Pennsylvania corporation engaged in a general banking and trust company business in the Borough of Shamokin, County of Northumberland and State of Pennsylvania.

2. The District of the Poor of Coal Township is a municipal corporation created by Special Act of Assembly, approved April 15, 1863, P. L. 492, for the purpose of providing funds for the accommodation, care and welfare of the poor in the Township of Coal, County of Northumberland and State of Pennsylvania. There is now included within the boundaries of said poor district the said Township of Coal and Borough of Shamokin.

3. That Michael M. Meehan, William H. Wetzel and Samuel E. MacElwee, defendants, are the duly elected, qualified and acting directors of said Poor District of Coal Township.

4. That the plaintiff is a taxpayer in said Poor District of Coal Township and files this bill in its own behalf and in behalf of all other taxpayers in said poor district who may desire to join therein.

5. The net indebtedness of the said poor district on Dec. 31, 1927, was $49,365.49.

6. The net indebtedness of the said district on Dec. 31, 1928, was $150,755.56.

7. The net increase of indebtedness during the year 1928 was $101,420.39.

8. That the last preceding valuation of said poor district was $22,629,330.

9. That on May 23, 1928, the Directors of the Poor of Coal Township levied a tax of 5 mills for general purposes, which was the only tax levy made during that year.

10. The said levy of 5 mills produced a gross income of $112,556.59.

11. The said gross income of $112,556.59 is subject to a 10 per cent. reduction for collection, treasurer's commissions, exonerations, errors and double assessments, leaving a net income of $101,200.94.

12. That during the year 1928 the Directors of the Poor of Coal Township negotiated loans in the sum of $180,000, and repaid during said year $9000 on loans heretofore made to the district, leaving a net increase in loans for the year 1928 of $171,000.

13. Up to May 25, 1928, the date of levying the tax rate, the directors had spent, in cash, $88,839.32.

14. Up to the said date, the unredeemed orders issued amounted to $12,229.31.

15. On the same date, the unpaid commissions due the treasurer for moneys expended in 1928 amounted to $2632.31, and accrued salaries to $1565.

16. Up to the date of the tax levy in 1928, the total expenditures and accrued bills for that year amounted to $105,365.94.

17. The 5 mills tax levied by the poor directors on May 23, 1928, was insufficient to pay the expenditures of, and obligation incurred by, the district to the date of levy.

18. The fixed overhead of the district from May 25, 1928, to Dec. 31, 1928, exclusive of outdoor relief, amounted to $36,911.

19. The total expenditures and accrued bills to May 25, 1928, and the fixed charges of the district subsequent to May 25, 1928, amounted to $142,176.94, exclusive of outdoor relief.

20. On Dec. 31, 1928, the net indebtedness of the district was $150,785.88, and on April 23, 1929, the indebtedness was $244,124.09, an increase of $93,-338.21 from Jan. 1, 1929, to April 23, 1929.

21. On May 23, 1929, the directors of the poor made a levy for general purposes of 6 mills and of 2½ mills for the purpose of repaying the outstanding obligations of the district.

22. Thereafter the said directors of the poor filed a statement of assets and liabilities of said district in the office of the Clerk of the Court of Quarter Sessions of Northumberland County, Pennsylvania.

23. From the statement filed, cash expenditures of the district, amounting to $52,395.22, for the expense incurred from Jan. 1, 1929, to April 23, 1929, were omitted.

24. The said statement does not show the actual indebtedness of the district as of the date on which it was filed because of the omission therefrom of $52,395.22.

25. The statement also failed to fix the form, number and date of maturity of the obligations to be issued by the said district.

26. The principal officers of the district failed to append thereto their oath or affirmation of the truth of the facts therein stated.

27. The expenses of the district from Jan. 1, 1929, to April 23, 1929, were $93,338.21; the estimated overhead for the remainder of the year, as per statement filed, is $39,338; the estimated outdoor relief, $42,000, and incidental expenses, $866.21. The total indebtedness already incurred and the estimated cost of running the district for the remainder of the year 1929 is $175,542.52.

28. That a levy of 8½ mills, after deducting commissions, exonerations, double assessments and errors, will not produce sufficient revenue to pay the estimate of expenditures made by the directors for the year 1929.

29. That a 6 mills tax levy is insufficient for the payment of the estimated running expenses of the district for the year 1929, exclusive of outdoor relief.

30. That the total expenditures to April 23, 1929, and the estimated overhead costs for the balance of the year will exceed the net revenue produced by a 6 mills levy.

31. Under the tax levy made by the directors for the year 1929, there will be no money available for outdoor relief during the remainder of the year.

32. On Dec. 31, 1928, there was cash in the treasury amounting to $39,402.81, which was available for the payment of indebtedness incurred during 1928. No moneys received during 1929 were used or applied in payment of expenses incurred during the year 1928.

33. On July 1, 1928, the directors of the poor had spent all moneys raised by taxes for the year 1928.

34. On April 3, 1928, the plaintiff, the Shamokin Banking and Trust Company, loaned the poor district the sum of $10,000.

35. The note of April 3, 1928, was renewed on Jan. 3, 1929, and is a valid, subsisting obligation of the district.

36. That in increasing the indebtedness of the said poor district during the year 1928 the said directors of the poor neglected and failed to comply with the provisions of section 2 of the Act of April 20, 1874, P. L. 65.

37. That in increasing the indebtedness of said poor district during the year 1928 the said directors of the poor neglected and failed to procure the approval of the Secretary of Internal Affairs of the State of Pennsylvania, as provided by the Act of Assembly of March 31, 1927, P. L. 91.

38. That at the time said indebtedness was created the directors of the poor neglected and failed to levy a tax for its repayment.

39. That at the time the defendant directors levied their taxes they made no budget of their probable expenditures for the ensuing year, neither did they make any calculation as to whether the income produced by such levy would be sufficient to pay the current expenses for the year; that they made the levies blindly, without any regard to the amount of revenues needed for the conduct of the business of the district.

## Discussion.

Section 8, article 9 of the Constitution of Pennsylvania provides: "The debt of any county, city, borough, township, school district or other municipality or incorporated district, except as provided herein and in section 15 of this article, shall never exceed 7 per centum upon the assessed value of the taxable property therein. . . ."

Section 10, article 9 of the Constitution of Pennsylvania provides: "Any county, township, school district or other municipality incurring any indebtedness shall, at or before the time of so doing, provide for the collection of an annual tax sufficient to pay the interest and also the principal thereof within thirty years."

Section 2 of the Act of April 20, 1874, P. L. 65, provides that any municipality or incorporated district may incur debt or increase its indebtedness to an amount in the aggregate not exceeding 2 per centum of the assessed value of the taxable property therein as fixed and determined by the last preceding assessed valuation thereof, and the corporate authorities of such municipality may, by a vote thereof, duly recorded upon its minutes, authorize and direct the incurring or increasing of such debt to the amount aforesaid, and may issue coupon bonds or other securities thereof in sums not less than $100 each, bearing interest at a rate not exceeding 6 per centum per annum, payable semi-annually, and the principal thereof to be reimbursed within a period not exceeding thirty years from the date at which the same was authorized, and an annual tax, commencing the first year after such debt shall be increased or incurred, equal to at least 8 per cent. of the amount thereof, shall be forthwith assessed to provide for the payment of the interest and the liquidation of the principal thereof, and the moneys arising from such tax shall be applied annually, as fast as the same accumulates, to the redemption at par of the said outstanding obligations. Before issuing any such obligation or security, it shall be the duty of the principal officer or officers of such municipality or incorporated district to prepare a statement showing the actual indebtedness of such district, the amount of the last preceding assessed valuation of the taxable property therein, the amount of debt to be incurred, the form, number and date of maturity of the obligations to be issued therefor, and the annual tax to be levied and assessed to pay the said indebtedness, and he shall make and append thereto his oath or affirmation of the truth of the facts therein stated and shall file the said statement in the office of the Clerk of the Court of Quarter Sessions of the proper county.

Section 2 of the Act of March 31, 1927, P. L. 91, provides: "It shall be the duty of the Department of Internal Affairs to carefully examine all proceedings had by the several municipalities of the Commonwealth for the incurring or increasing of the indebtedness thereof and to ascertain whether·the proposed debt is within the limitations imposed by the Constitution, and whether such proceedings are in conformity with existing laws."

The 3rd section of the same act provides as follows: ". . . the president or chairman of the board of poor directors or overseers of each poor district which shall have any proceedings for the incurring or increasing of indebtedness, except notes issued in anticipation of revenue for not more than one year, shall, before any bonds or evidences of indebtedness are actually issued and sold, certify to the Department of Internal Affairs a complete and accurate copy of the proceedings had for such incurring or increasing of indebtedness, together with the assessed valuation of the property subject to taxation within the respective municipality, the total amount of existing indebtedness and the several amounts claimed as permitted deductions in ascertaining the real indebtedness of such municipality."

Sections 4 and 5 of the same act require the Department of Internal Affairs to certify to the proper municipality its approval or disapproval thereof. Section 6 provides that it is unlawful for any municipality to issue or sell bonds or other evidences of indebtedness unless the provisions of this act have been complied with, and that all such bonds and other evidences of indebtedness

issued contrary to the provision of this act shall be invalid and impose no liability on the municipality or have any lien.

In the case of Georges Township *v.* Union Trust Co., 293 Pa. 364, at page 369, the power of a municipality to borrow money or create debt is stated as follows:

"First, there must be a lawful purpose for which the money is to be used or the debt created; and, second, the amount which can be borrowed is determined by reference to *(a)* the current revenues due or created within the year, and *(b)* the constitutional percentage authorized on the assessment value of property. The procedure necessary to give effect to the borrowing power is not an incident of the power, but a regulation for its proper exercise. The purpose for which money is to be used or a debt is to be created may be ascertained from the authorizing acts or duty enjoined or necessarily implied therefrom. In this case, it is alleged that the notes were given for loans incurred for the repair and improvement of public roads. This is a proper purpose for which money can be borrowed or a debt created, if the notes are valid obligations in other respects as well.

"Money borrowed for current expenses must be a sum within the current revenue. Current revenues include taxes for the ensuing year, and all liquid assets, such as delinquent taxes, licenses, fines and other revenue which, in the judgment of the authorities, are collectible. Current expenses have first claim on ordinary revenue and contemplate operating expenses. . . ."

In the same case, Georges Township *v.* Union Trust Co., *supra*, it is further stated: "It was early stated that where the debt created in any year exceeded current revenues and could not be paid therefrom, the debt was void, unless steps were taken to pay by bonds under what is termed the constitutional provision. The Constitution was intended to prevent the citizens from being overburdened by municipal taxation: City of Erie, 91 Pa. 398. It would be rather dangerous to announce as a principle that the ordinary running expenses should be cared for by bonds. If the taxing power is impotent to bring sufficient revenue for that purpose, the constitutional limit would be quickly reached."

In Jackson *v.* Conneautville Borough School District, 280 Pa. 601, at page 607, the right of a municipality to create indebtedness is thus stated: "Of course, a municipality may create debts within its current revenues, regardless of existing indebtedness (City of Erie's Appeal, 91 Pa. 398; Wade et al. *v.* Borough et al., 165 Pa. 479), but cannot go beyond, even where payment is to be made solely out of a specially designated income: Lesser *v.* Warren Borough, 237 Pa. 501; McKinnon *v.* Mertz, 225 Pa. 85; Brown et al. *v.* Corry, 175 Pa. 528; and see City of Santa Cruz *v.* Wykes et al., 202 Fed. Repr. 357, 375. A municipality must live within its means and can no more increase its indebtedness beyond its actual or expected annual income for payment of current expenses than for any other purpose. It is the increase of indebtedness that is forbidden, regardless of the object to be accomplished thereby."

With the foregoing principles in mind, we turn to the facts and find that on Dec. 31, 1927, the indebtedness of the district was $49,365.49; on Dec. 31, 1928, the net indebtedness of the district was $150,785.88, a net increase of indebtedness during the year 1928 of $101,420.39; that the levy of 5 mills for the district for the year 1928 produced a net income of $101,200.94, about one-half the required amount to care for the current expense of the year. It further appears from the facts found that, on July 1, 1928, the directors of the poor of the defendant district, by borrowing and incurring debt, had exhausted the current revenues for the entire year. It thus clearly appears that the

defendant district was not living within its current revenue as required by law, and that all indebtedness incurred during the year 1928, subsequent to the first day of July, 1928, is unlawful and invalid.

The money expended by the defendant district from Jan. 1, 1929, to April 23, 1929, was $93,338.31; the estimated overhead for the remainder of the year was $39,338; the interest on borrowed money for the balance of the year 1929 is $11,550.65, making a total of $144,226.86. This amount will be reduced to the extent of the interest on the invalid obligations. On May 23, 1929, the defendant levied 6 mills for the general purposes. This millage will produce a net income, after the ordinary deductions, of $122,198.39, which is a sum insufficient to pay these items and practically leaves nothing for outdoor relief, which is estimated at $6000 per month. It is apparent that the directors of the poor had knowledge that they were not levying sufficient taxes to care for the ordinary expense of the district and persisted in keeping an inadequate mill rate, depending upon their ability to borrow money to carry them through the year when the current revenues were exhausted. Certainly, the levy of 6 mills for general purposes in 1929, in view of the fact that a mere inspection of their operating expense for 1928 showed the necessity for a 10 mill levy, shows a disposition to continue the methods employed in 1928. This they may not do under the law.

### Conclusions of law.

The Chancellor makes the following conclusions of law:

1. This court has jurisdiction of the cause and the parties are properly before the court.

2. "Debt" and "indebtedness" in section 8, article 9 of the Constitution are not used in any technical sense, but in their broad general meaning of all contractual obligations to pay in the future for consideration received in the present.

3. The limitations on all municipalities to the power to create a debt or borrow money are as follows: (1) There must be a lawful purpose for which the money is to be used or the debt created; and (2) the amount which can be borrowed is determined by reference to (a) the current revenues due or created within a year, and (b) the constitutional percentage authorized on the assessment value of property.

4. The procedure necessary to give effect to the borrowing power is not an incident of the power, but a regulation for its proper exercise.

5. Money borrowed for current expenses must be a sum within current revenues.

6. Current revenues include for the ensuing year all liquid assets, such as delinquent taxes, licenses, fines and all other revenues which, in the judgment of the authorities, are collectible.

7. Current expenses have first claim on ordinary revenues.

8. When a debt created in any year exceeds current revenues, and cannot be paid therefrom, the debt is void unless steps are taken to pay by bonds under a constitutional provision.

9. Notes which are otherwise valid and within the current revenues are valid obligations, although renewed after current revenues are exhausted.

10. A statement filed by a municipality which does not contain the form, number and date of maturity of the obligations to be used, and which is not sworn to and [or] affirmed by the principal officer of the municipality nor [and does not] contain [a statement of] a levy for the retirement of the indebtedness within thirty years, does not comply with the Act of Assembly of April 20, 1874, § 2, P. L. 65.

11. The defendant district had expended and exhausted its current revenue for the year 1928 on July 1, 1928, and all debts and obligations incurred after that date are void.

12. On April 23, 1929, the defendant district had practically exhausted its current revenue for the year, as shown by its expenditures to that date and the overhead charges, for which it was obligated.

13. That a decree be entered preventing and restraining the defendant district from the payment of such unlawfully incurred indebtedness and the incurring of additional unlawful indebtedness in the year 1929.

### Decree.

And now, Aug. 14, 1929, the prothonotary is directed to enter a decree *nisi*, enjoining and restraining the said defendant district from paying any of the current revenues and income of the said poor district on account of any notes, bonds or other obligations of the said district which form part of, or are included in, the illegally increased indebtedness of the said poor district incurred during the years 1928 or 1929; that the said defendant district is further enjoined and restrained from borrowing money or incurring any indebtedness during the remainder of the year 1929 in excess of its current revenues. The prothonotary is further directed to give notice to the parties or their counsel of record of the entry of this decree *nisi*, who may file exceptions thereto within ten days after such notice, as provided for in Equity Rule 69.

From C. M. Clement, Sunbury, Pa.