## Burger, to use, v. Freedom Township.

*Robert W. Smith*, for plaintiff; *B. F. Warfel*, for defendant.

PATTERSON, P. J., Dec. 17, 1929.—Miles Snowberger, Archie Claar, Supervisors, and Ross A. Burket and G. M. Shaefer, Auditors, of the Township of Freedom, Blair County, Pennsylvania, on Oct. 29, 1928, filed their petition for a rule upon the First National Bank of Claysburg to show cause why judgment entered to No. 399, June Term, 1928, upon which a mandamus execution to No. 148, October Term, 1928, had issued, should not be opened and the petitioners, representing the Township of Freedom, allowed to defend, and answer thereto.

On June 14, 1924, the defendant township, by its supervisors, L. A. Shaw, H. R. Benton and Henry Shaw, executed a judgment note in the sum of $2000, payable in one year, to H. C. Burger. The note was assigned by H. C. Burger to the First National Bank of Claysburg as collateral security for the payment of a loan made to Burger. The petition avers that the said H. C. Burger was, at the time he received said note, tax collector for the Township of Freedom, and that the note was given him for the purpose of raising money for the payment of orders which had been previously issued by road supervisors, and that the said orders were never returned to the township auditors for cancellation. And the petition further avers:

"(a) That the note in question was authorized at a special meeting and that the minutes do not show for what purpose the special meeting was called.

"(b) That at the time the resolution was passed by the board of supervisors for the borrowing of $2000.00 for the payment of township indebtedness, the indebtedness was already in excess of the two per centum of the assessed valuation of the taxable property.

"(c) That at the time the resolution was passed authorizing the execution of the obligation, there was in the hands of the treasurer the sum of $2528.60, and, therefore, no occasion for borrowing or creating an additional debt.

"(d) That it was the understanding of the township auditors that certain orders which the said Burger claimed to have in his possession would be turned over to the auditors for cancellation, which was not done."

An amended petition was later filed, setting forth that the said note had endorsed thereon several credits which reduced the amount now due and owing to the sum of $900, with interest from October, 1928.

The First National Bank of Claysburg and H. C. Burger filed an answer to this rule, in which they deny all of the averments contained in said petition and state that the credits endorsed on said obligation are there through error on the part of the plaintiff bank. That the same should have been credited to the individual obligation of H. C. Burger and not to the collateral note of the township.

The testimony of D. Emmert Brumbaugh, cashier of said bank, and H. C. Burger clearly establishes the fact that the payments by H. C. Burger to the

bank should have been credited to the individual note of Burger. This testimony is not successfully refuted. The financial statement of the township for the year 1924, recorded in Quarter Sessions Docket "Y," at page 467, shows, amongst the receipts for that year, the following item: "Received from H. C. Burger—note—Claysburg Bank, $2000.00." Said statement schedules the same item as one of its liabilities for the year 1924, and at the close of the statement is the following certificate signed by the auditors: "We find the above obligations to be true and correct. Signed: Ross A. Burket, A. R. Hazenstab, G. M. Shaefer, auditors." And, again, for the year 1925 the same auditors filed their financial statement in the Quarter Sessions Docket "Z," at page 178, with the following items scheduled: "Note, H. C. Burger for orders, orders collateral, $2000.00." This petition, therefore, signed by Messrs. Shaefer and Burket, setting forth the alleged irregularities and illegal actions of the board of supervisors, is in direct contradiction to the report which they as auditors filed at the close of the years 1924 and 1925. This proceeding, instituted at the close of the year 1928, more than four years after the said note was executed, is evidently for the purpose of calling upon the court to declare irregular and illegal transactions which two of the petitioners, as auditors of the township, examined and approved four years before. The office of township auditor is created for the purpose of examining and passing upon the accounts of the township officers. And if the auditors make any mistakes, any citizen of the township has a right to file exceptions to said report within a limited period. In the present case we have the very matters now complained of approved by the auditors and no exceptions to their action by any citizen of the township.

In the case of Georges Township v. Union Trust Co., 293 Pa. 364, 374, it is held: "Whether the loan is within current revenues or in the constitutional class, the validity of the loan is not denied in the pleadings, and the presumption would be that the township supervisors, as public officers, had regularly performed their official duty in issuing the notes: Vernon Township v. United Natural Gas Co., 256 Pa. 435; Jefferson County v. Rose Township, 283 Pa. 126, 130. The court may well rest on this presumption and until it is overthrown the notes stood as valid obligations, and judgment for this reason could not be entered against defendant."

And in the same opinion, Mr. Justice Kephart so well states the law applicable to the matter now under consideration (page 377): "Another question should be touched on, though not specifically raised, but we will not decide it. The code provides for auditors who audit the accounts of these officers. The notes, or some of them, have been in existence for years. If there has been an illegal act or irregularity, why was it not determined long ago? The law adopts its own procedure to safeguard the funds of a municipality through surcharge of the officer responsible, with recourse to his bondsman."

And in the same opinion (page 376): "Moreover, in this case the township authorities, when the books were balanced, recognized the notes as being a sufficient order, accepted, approved and ratified them. Where a debt has been lawfully contracted for and an imperfect order or direction for payment given, the supervisors may later ratify the act of payment."

In Scott et al. v. Strawn, 85 Pa. 471, it is held: "A collector of bounty tax, appointed by the board of school directors, offered to settle his accounts with them. They refused to allow him to do so and referred him to the township auditors, by whom his accounts were settled in the presence of three of the board and a settlement duly made and recorded, after which the auditors destroyed his vouchers. No action was taken by the board for five years. In a

suit on the collector's bond: Held, that the auditors were not the proper tribunal and that the 14th section of the Act of March 25, 1864, P. L. 90, and the 1st section of the Act of April 11, 1866, P. L. 778, gave them no power to audit the accounts.

"Held, further, however, that the board was estopped by its conduct and long acquiescence from objecting to the record of the settlement as at least *prima facie* evidence of the facts it contained, and that it should have been received."

And in Com., to use, *v.* Gruver et al., 13 Pa. Superior Ct. 553, it is held: "The township auditors' settlement of the tax collector's accounts is but one step in fixing the liability of the collector, but when it is not appealed from to the court of common pleas as provided by law, he elected to make that step a final one and to be bound by it, and the appellate court cannot review it on appeal from a judgment entered on the surety's bond."

We are satisfied that the petition is without merit, and there is no act of assembly or decision by our courts in support of the averments and the testimony of the petitioners. If the law permitted such a proceeding as the present one, there would be no end of controversy, and litigation of the accounts of municipal authorities would arise and continue indefinitely. The rule is, therefore, discharged, at the cost of the petitioners.