## Grey v. Nissley et al.

*Henry E. Harner* and *Walter H. Compton,* for complainant.

*Joseph Nissley* and *W. S. Livengood, Jr.,* for respondents.

Braham, P. J. (fifty-third judicial district, specially presiding), October 8, 1948.—The case is before the court on a bill in equity for an injunction to restrain defendants, who are Supervisors of Lower Paxton Township in Dauphin County, and one who has contracted with them, from erecting a scales and scale house. The grounds for injunctive relief as they have been alleged are a failure to follow the proper legal procedure in awarding the contract and an entire want of lawful authority to expend township money for the purchase or installation of scales for weighing trucks. The bill was answered and the evidence of both sides has been heard. From the evidence we make the following

### Findings of Fact

1. Plaintiff is a citizen and taxpayer of Lower Paxton Township, Dauphin County, Pa., a township of the second class. This township lies east of Harrisburg and through it passes State Highway Route 22.

2. Before and after August 14, 1947, the supervisors have been aware that many motor trucks loaded beyond the legal limits were passing along Route 22 and on the other highways of the township. They knew that the State Police of the Commonwealth of Pennsylvania were constantly arresting violators of

this and other provisions of The Vehicle Code and that fines for violations within the township were being paid into the township treasury. These payments aggregated more than $8,000 per year, most of which were for overloading.

3. To detect violations of the law trucks were weighed either on the privately owned scales of one Albright or on portable scales of the State Highway Department. Neither of these methods was entirely satisfactory. The Albright scales were not large enough to weigh the large trucks which were being brought in largely because it was not located on a level place and hence did not weigh accurately. The portable scales were hard to move and it was difficult to find a level and safe place close to the highway on which to erect them. The township had to pay for the weighing on the privately owned scales and this bill sometimes amounted to more than $40 per month. A great deal of the illegal traffic was passing through on the main route, Route 22. The State police were inclined to make arrests in those townships where the trucks might be weighed more rapidly and satisfactorily. The State police preferred to weigh on proper stationary scales because they were in general more satisfactory.

4. Under these circumstances it was represented to defendant supervisors by members of the State police force that it would be advantageous for Lower Paxton Township to erect a scales. Defendant supervisors, moved largely by the desire to secure money from fines, penalties and forfeited bail in cases of overloading in order to meet the township's tax burden for road purposes, determined to buy a scale.

5. On or about August 14, 1947, defendant supervisors ordered from the Howe Scale Company a truck scale at a cost of about $2,300. Because they deemed the scale to be a patented article the supervisors did

not advertise for bids for the scales. Of the total price of the scale $1,387 has been paid. No formal resolution to buy the scale was adopted.

6. About August of 1947 defendant supervisors, being advised that the scales would shortly be ready for installation, began to consider a site. At the same time they took into account a need for a town hall or meeting place, which need they found to exist.

7. The place where the supervisors had previously met was in the sheds which housed their road working equipment. It was not a place designed or fitted for meetings.

8. Subsequently, to wit, in December of 1947 defendant supervisors bought a lot of land on which to build the scale house and meeting place.

9. On March 1, 1948, defendant supervisors unanimously adopted the following resolution: "March 1, 1948. Resolution was made by C. M. Carl, and seconded by D. C. Rabuck, to advertise for bids on our scale and scale house placed on our lot. The scale house can be used for an office, as we have trouble getting a suitable place at times to hold our meetings."

10. Subsequently defendant supervisors proceeded to advertise for bids by causing to be published in the issues of the Middletown Journal of April 23, and April 30, 1948, an advertisement in the following form: "Notice. Sealed proposals will be received by the supervisors of Lower Paxon Township, Dauphin Co. until 7 a.m., May 3, 1948 for the following: To erect a foundation wall and scales, 50 ton capacity, 50 feet length, and also a building on part of same. Specifications and size of building can be secured from C. C. Rabuck, Secretary of Board, Harrisburg R. D. 2. The supervisors reserve the right to reject any or all bids. C. C. Rabuck, Secretary".

11. Three prospective bidders communicated with C. C. Rabuck, the secretary of defendant township, and

each one was shown the plan of the scales as furnished by the Howe Scale Company, which appears in evidence as plaintiff's Exhibit 2 and a plan of the scale house. Each was advised that bids would be received at the township sheds or at Mr. Rabuck's home up to 7 a.m. of May 3, 1948. No bidder was required to make any deposit of money with his bid.

12. Each of the three bidders presented a sealed bid, the lowest of which was the bid of Paul Martin of Mount Joy in the sum of $4,600. All were received before 7 a.m. May 3, 1948.

13. After 7 a.m. and before 8 a.m. of that morning defendant supervisors in a regular meeting adopted a resolution duly awarding the contract to Paul Martin, voting on their minutes: "Paul Martin was given the contract as low bidder, and to begin work as soon as the scales arrive".

14. On May 24, 1948, Paul Martin executed and delivered to defendant supervisors a memorandum of the work he had engaged to do. It appears in the evidence as plaintiff's Exhibit 1. On the same date defendant supervisors caused to be noted thereon their acceptance signed by their secretary in these words: "Acceptance. We hereby authorize the Contractor to proceed with the above work. Lower Paxon Twp. Suprs. (Owner's Signature (s) C. C. Rabuck Sec."

15. No bond has been put up by Paul Martin to secure performance of the work. Within the time when the bond should have been given the opposition which has resulted in this suit began to appear and the contractor with the acquiescence of the supervisors decided not to post a bond until the dispute was decided.

16. There was a prior suit in equity between the same parties in which plaintiff sought to enjoin the erection of the scales and scale house as a nuisance, but the granting of a preliminary injunction was refused by the court and the present suit was brought.

17. The building which defendant supervisors have determined to build is intended to serve as a scale house and a meeting place for the supervisors and citizens; but the building contracted for is not the building which they would build if the expenditure of township moneys for a scales and scale house is found to be unlawful.

## Discussion

May a township of the second class lawfully expend township money for the erection of a scales to weigh trucks and a building to house the same? This is the fundamental question for decision in the present case, although the problem is complicated somewhat by the expressed desire of the supervisors to use the building as a meeting house as well as a scale house. Our finding that the paramount purpose is to build a scale house compels the conclusion that the contract in question ought not to be sustained if the primary purpose is illegal.

The starting point in our inquiry is the principle that municipal corporations have only such powers as are given to them by the legislature: Shirk v. Lancaster City, 313 Pa. 158, 162; Commonwealth v. Moir, 199 Pa. 534, 541. As was said in American Aniline Products, Inc., v. Lock Haven, 288 Pa. 420, 423:

"A municipal corporation can function only through the powers granted by the legislature in its charter of incorporation, or those powers incident or related thereto as essential and necessary to carry out the declared objects contained in such express powers. Beyond such grant of authority, a municipality possesses no powers by implication. If there is doubt as to the existence of authority, or whether an act is fairly referable to any of the delegated powers, the doubt must be resolved against its existence. (See Appeal of Whelen, 108 Pa. 162.) Further, the power which the

city exercises must not contravene any constitutional limitations, either state or federal."

Townships of the second class are those having less than 300 inhabitants to the square mile. Of them it has been said: "Second-Class Townships are not clothed with the general powers given to cities, boroughs and first-class townships": Georges Township v. Union Trust Co., 293 Pa. 364, 369.

The law of townships of both classes was codified in The General Township Act of July 14, 1917, P. L. 840, which was largely repealed as to second class townships by The Second Class Township Law of May 1, 1933, P. L. 103. This has been frequently amended and was reënacted by the Act of July 10, 1947, P. L. 1481, 53 PS §19093. Close examination of this legislation is required to determine whether second class townships are authorized to expend money for scales. In none of the acts is there found a specific grant of this power; is it granted in general terms or by necessary implication?

The general powers of townships of the second class are found in section 385 of the Act of 1917 and in section 701 of the later acts (53 PS §19093-701). The power to take and hold real and personal property is conferred by the Act of 1917 "only for the benefit of the inhabitants of the township, and for such objects and purposes as township rates and levies are authorized by law to be laid for". In the Act of 1947 second class townships are given power to "purchase, acquire by gift or otherwise, hold, lease, let and convey such real and personal property as shall be deemed to be for the best interests of the townships. Such real and personal property shall be taken and held only for the benefit of the inhabitants of the township and for such objects and purposes for which the township tax and special tax assessments are authorized by law".

More detailed powers as to roads are granted by section 236 of the Act of 1917 and by section 516 of the Act of 1947 (53 PS §19093-516). All of the acts state, quoting from the Act of 1947, that the township supervisors shall (section 516(a)) "have the general care and superintendence of the improvement of the roads and bridges in the township, except as otherwise specially provided"; (section 516(b)) "Cause such roads and bridges to be kept in repair and reasonably free from all obstructions, and give the necessary directions therefor"; and (section 516(i)) "Perform such other duties and have such other powers with respect thereto as may be imposed or conferred by law or the rules and regulations of the Department of Highways". These are the powers which relate in general to roads.

More detailed powers of various kinds are found in section 386 of the Act of 1917 and section 702 of the Act of 1947 (53 PS §19093-702). Here the growth in the powers of second class townships is most apparent. Garbage regulation, traffic lights, forest protective associations and forests, nuisances including automobile junk yards, armories, the National Guard, burial places for former service men and their memorials, fireworks, parks, zoning ordinance, sewers, cemeteries, public amusements, dogs and peddlers; none of these subjects were regulated by second class townships under the Act of 1917 but by the Act of 1947 or the intervening legislation power to do so was granted. There is one enlarged provision in the Act of 1947 with respect to roads. It is as follows (section 702(x)):

"To purchase or hire material, equipment, machinery, teams and implements as shall be necessary for the construction, repair and maintenance of roads and bridges."

Of importance in our consideration are the provisions with reference to the powers of second class town-

ships to contract. Section 385 of the Act of 1917 provided that such townships may: "Make such contracts as may be necessary for carrying into execution the provisions of this Act". This language was repeated in the Act of 1933 but section 801 of the Act of 1947 (53 PS §19093-801) provides: "Power to make contracts—Each township may make contracts for lawful purposes and for the purpose of carrying into execution the provisions of this Act and the laws of the Commonwealth". This, from defendants' viewpoint, is the key section of the act indicating, as it does, the intent to grant to townships power to spend township money for purposes beyond those theretofore enjoyed.

Section 701 of the Act of 1947 (53 PS §19093-701) calls into question "objects and purposes for which the township tax and special tax assessments are authorized by law". Section 902 of the Act of 1947 (53 PS §19093-902) relates to the budget and requires estimates of: (A1-a) the amount of money necessary for the construction, maintenence, repair and improvement of roads; (A1-c) the amount of money necessary for the purchase, hire, repair and custody of equipment, machinery, teams and implements; (A1-d) the amount of money necessary for each other governmental activity of the township, for which a special tax levy may or may not be authorized".

Section 905 of the Act of 1947 (53 PS §19093-905) provides for the levying of taxes in six categories: (1) The township tax for road, bridge and general township purposes; (2) a lighting tax when required by vote; (3) a tax for a town hall; (4) a fire tax; (5) a water tax; (6) a tax for parks and playgrounds.

Before attempting to apply this legislation to the facts as we have found them it is essential to survey also the legislation regarding the overloading of trucks, the arrest of those operating them, the weighing of the trucks and the disposition of the fines and other monies.

Section 903 of The Vehicle Code of May 1, 1929, P. L. 905, as amended (75 PS §453) establishes the limit for vehicles and loads. Section 904 of the act (75 PS §454) provides for arrests.

"Any peace officer who shall be in uniform, and shall exhibit his badge or other sign of authority, having reason to believe that the weight of a vehicle and load is unlawful, is authorized to weigh the same, either by means of portable or stationary scales, or may require that such vehicle be driven to the nearest stationary scales in the event such scales are within a distance of two (2) miles. The peace officer may then require the operator to unload immediately such portion of the load as may be necessary to decrease the gross weight of such vehicle to the maximum gross weight specified in this act, except as herein provided for special permits: And further provided, That no arrests shall be made, or information brought in cases where the maximum gross weights provided in this act are not exceeded by more than five (5) per centum thereof."

Section 1207 of the Act of 1929, as amended (75 PS §737), provides that "all fines and penalties collected and all bail forfeited" in cases where overloading is charged to have been "committed within cities, boroughs, incorporated towns, and townships" shall be paid to the treasurer of the municipality wherein the violation occurred, to be used by such municipality "for the construction, repair, and maintenance of the highways thereof".

What powers have townships of the second class to prevent use of roads in the township by overloaded trucks? As defendant supervisors apparently believe, only the right to have the State police arrest offenders. This, however, is not the law. Section 904 of The Vehicle Code (75 PS §454) allows any peace officer in uniform to make arrests and take such truck to

a scales. By section 590 of the Second Class Township Code of 1947 (53 PS §19093-590) the supervisors are authorized to appoint policemen who become ex officio constables and therefore peace officers under the definition in section 2 of The Vehicle Code (75 PS §2). Section 593 of the Act of 1947 authorizes the supervisors to provide the policemen of the township with "a uniform and equipment and means of transportation".

Accordingly if the supervisors of Lower Paxton Township should find the roads of the township being pounded to pieces by overloaded trucks they have the power to stop the practice by prompt arrest and conviction. If the State police are not interested or are busy elsewhere the supervisors may cause the arrests to be made by their own police or any peace officer in uniform. All the evidence in the case relates to arrests on the State highways but the prohibition against overloading applies with greater force to township roads than to State roads because the former are ordinarily less able to stand the weight. There is no evidence before us of any township roads but their existence may be fairly presumed from the evidence about a shed full of road working machinery which belongs to defendant township. Viewing the subject largely it is perfectly clear that there may be second class townships whose roads are being swiftly destroyed by some sudden movement of overloaded trucks, such as might accompany a coal strip-mining operation, and which must have the right to proceed promptly to halt the practice.

Does the township have the right to provide the State police or officers of its own choosing with a scales to weigh the trucks? The enlarged powers of supervisors discussed above include the general power to maintain the roads and the power to buy real and personal property "as shall be deemed to be for the best interests of the township", provided it shall be "held

only for the benefit of the inhabitants of the township, and for such objects and purposes for which the township tax and special tax assessments are authorized by law". A special power given with respect to roads is "to purchase, or hire material, equipment, machinery, teams and implements as shall be necessary for the construction, repair and maintenance of roads and bridges". Taxes may be levied for the "construction, maintenance and repair of roads", for the purchase of equipment, machinery, teams and equipment" and for "other governmental activity of the township for which a special tax may or may not be levied".

It thus becomes apparent that the power to buy scales and build a scale house must exist, if it exists, in connection with the power to maintain roads and to buy equipment to maintain roads. Here obtrudes the section relied upon by defendant supervisors: "Each township may make contracts for lawful purposes and for the purpose of carrying into execution the provisions of this act and the laws of the Commonwealth." The phrase "for lawful purposes" is old in our law; the phrase "and the laws of the Commonwealth" is new. By section 52(2) of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §552, the legislature enjoined the courts to give effect to all parts of a statute. In the phrase "for carrying into execution the provisions of this act and the laws of the Commonwealth" the latter part may refer only to the new powers given second class townships by the Act of 1947, some of which, such as the power to expend money for forestry or for National Guard units are to be exercised in connection with other State departments.

Rather, this new language has a wider connotation. It is to be considered with the other new grant of power to buy "real and personal property as shall be deemed for the best interests of the township". As the legisla-

ture widened the duties of supervisors so it widened their powers. The best way to "maintain" roads is to prevent their destruction, then it will not be necessary to "repair" them. The legislature did not mean that second class townships may give money for any project in which the State may be engaged. It may not contribute money to dredge the Schuylkill River or to buy a new electric chair for the State penitentiary. But the roads of the township are the special charge of the supervisors. Overloaded trucks passing through Lower Paxton and many other townships may destroy the roads in all; yet only the township in which the offense is detected and prosecuted gets any of the money from fines to make good the damage. Thus the township may lawfully provide a scales and scale house to detect offenses because only so do they obtain possible compensation to offset certain loss.

Defendant supervisors err in thinking of the scales as only a means to get revenue, a species of judicial simony. Rather it is a means of maintaining the roads, a means of making more certain that compensation comes where the loss falls. The difficulties of second class townships have in recent years been so multiplied and their powers and duties so enlarged by the legislature that to deny the relief here claimed would be to fly in the face of both law and events.

Was the contract with Paul A. Martin properly entered into? This is our final question. As to the passing of a resolution, the asking for bids, the advertisement, the furnishing of plans to bidders, the receipt of the bids, the opening of the bids, the award to the lowest bidder and the making of a formal contract, the provisions of the law have been complied with. One thing remains. Paul A. Martin, the successful bidder, did not give bond. The requirements of the law are as follows: "The successful bidder, when advertising as required herein, shall be required

to furnish a bond with suitable reasonable requirements, guaranteeing the work to be done, with sufficient surety in the amount of fifty per centum (50%) of the amount of the contract within twenty days after the contract has been awarded, unless the supervisors shall prescribe a shorter period not less than ten days, and upon failure to furnish such bond within such time, the previous award shall be void. Delivery, accomplishment and guarantees may be required in all cases of expenditures, including the exceptions herein".

The reason given for failure to give the bond is the uncertainty created by the two suits to enjoin the building. Nevertheless the law is clear and emphatic. Upon failure to give bond the previous award is void.

Because both sides were fully heard we are disposing of this case by a formal adjudication.

### Conclusions of Law

1. The making of a contract for the erection of a building to house a scales for weighing trucks and to serve as a meeting place for supervisors and citizens is within the powers of the supervisors of townships of the second class.

2. The failure of the successful bidder to give bond within 20 days after the award to him renders the previous award void. The supervisors have no power to extend the time for giving bond.

### Decree Nisi and Injunction

Now, October 8, 1948, after full consideration of this case it is ordered, adjudged and decreed than an injunction issue restraining D. M. Nissley, C. M. Carl and C. C. Rabuck, Supervisors of Lower Paxton Township, Dauphin County, Pa., and Paul A. Martin of Mount Joy, Pa., from erecting the scales and scale house contemplated by the contract between the said supervisors and Paul A. Martin and dated May 24,

1948, upon plaintiff giving a bond in the sum of $400, with sureties to be approved by the court.

The costs are placed upon defendants.

This adjudication and decree shall become final unless exceptions hereto are filed within 10 days after notice hereof.