TOWNSHIP COMMITTEE OF THE TOWNSHIP OF PISCATAWAY AND THE TOWNSHIP OF PISCATAWAY, A MUNICIPAL CORPORATION, PLAINTIFFS-RESPONDENTS, v. THE FIRST NATIONAL BANK OF DUNELLEN, A CORPORATION, DEFENDANT-APPELLANT.

Submitted February 16, 1933—Decided May 15, 1933.

For the defendant-appellant, *Joseph J. Mutnick, Jr.*

For the plaintiffs-respondents, *John T. Keefe (Edmund A. Hayes).*

The opinion of the court was delivered by

BODINE, J.  The township of Piscataway on December 30th, 1929, borrowed $50,000 from the First National Bank of Dunellen upon a temporary improvement note. The instrument was payable on demand before December 31st, 1930. It appears that $17,500 was paid thereon in installments prior to July 17th, 1931. For convenience, the plaintiff will be

referred to as the Township and the defendant as the Bank. The Township being in default the Bank, after demand on June 6th, 1932, charged the Township treasurer's general account with the balance due for principal and interest upon this note. The complainant in the present action alleges that the moneys in the treasurer's general account so taken represented moneys received to meet the Township's appropriations for 1932 to pay county, state, local school and fire taxes, and could not be taken for any purpose other than that for which it was appropriated. The Township sought to recover the moneys so misapplied, as it alleges, by the Bank. It had, for sometime, carried in the Bank a general treasurer's account. The proceeds of the improvement note were deposited in this account and were used to take up a similar note in like amount discounted at another bank, which note presumably had been called for payment. On February 3d, 1930, an assessment account was opened in the Bank and the payments made upon the improvement note were taken from that account.

The Bank answering claimed the right to charge any overdue obligations against the general account of the Township, and by counter-claim also sought to recover upon four tax revenue notes, each dated January 21st, 1932, and each in the sum of $25,000. Judge Cleary struck the answer as sham, indicating that the Township treasurer was obliged to disburse moneys raised by taxation for the purposes for which they were appropriated, and that the proper functioning of a municipality could not be interfered with by the acts of its bankers any more than they could be by the sheriff making a levy under a judgment. *Lyon* v. *City of Elizabeth*, 43 *N. J. L.* 158.

The case came before Mr. Justice Case on motion for the entry of judgments. He entered separate judgments in favor of each party, the Township, in the meantime, having withdrawn its answer to the counter-claim. The Bank appeals from the judgment in favor of the Township, and also claims error because the court refused to allow a set-off as between the two claims.

Temporary improvement notes are for the purpose of temporarily financing a work for which a municipality may issue improvements bonds. *Pamph. L.* 1916, *p.* 525, 539. Bonds being amortized over a long period of years, a municipality usually does not raise by taxation in any one year the amount of the notes, but refinances the same by the issuance of bonds. Of course, the gradual paralysis of finance, ending perhaps in the banking holiday, accounts for the difficulties of the parties to the present action.

A township's miscellaneous revenues are available only for expenditure as appropriated. *Pamph. L.* 1917, *p.* 548. Municipalities may borrow up to a certain percentage in anticipation of taxes. Notes, so given, are met as the taxes are received. However, steps may be taken to refund the same in the anticipated taxes are not paid. The taxes anticipated, when paid, must be used to liquidate tax revenue notes.

The general scheme of municipal finance is to raise in a given year as little by taxation as possible, and to borrow all the bankers will lend upon pledge of future revenue. The result is that the fixed debt upon which interest must be paid has become larger each year and since returns from taxation have diminished temporary financing becomes, of necessity, permanent. However bad the result, the necessity that a municipality function transcends all private inconvenience.

"It would be manifestly contrary to the theory upon which a part of the sovereignty of the state is delegated to local governments to concede to an individual the right to arrest their operations. The unrestricted right in the creditor to pursue the corporation by execution could, for all practical purposes, as effectually annul a city charter as its absolute repeal." *Lyon* v. *City of Elizabeth,* 43 *N. J. L.* 161.

The general account of a municipality is unlike an individual's general balance, which the bankers may apply on any overdue note. It is, in reality, a trust fund into which the current revenues are placed for disposition in accordance with the appropriations previously made. The safety and health of the citizen are of prime importance and neither can be endangered because a creditor wants his due. The munici-

pality can no more carry on without its general funds than it could without any other particular piece of property dedicated to public use. The creditors of a municipality must wait till their debt is raised by taxation. *Lyon* v. *City of Elizabeth,* 43 *N. J. L.* 158.

Mr. Justice Case, quite properly, in his opinion said: "Chapter 243, *Pamph. L.* 1927, being a supplement to the Municipalities act of March 27th, 1917, provides that 'whenever an action has been or hereafter may be commenced, by any municipality, in any court of law of this state against any person, persons or corporation, it shall be lawful for such person, persons or corporation having any claim or demand against the plaintiff to set up such claim or demand by way of set-off or counter-claim, subject to rules, and the same shall be considered upon the trial of any such action.' This statute has been complied with. The defendant did set up its demand by counter-claim and the counter-claim was not only considered but has been allowed as a substantive cause of action upon which judgment should be entered. I cannot think that the defendant may arbitrarily and without judicial process seize upon and apply in partial satisfaction of the debt municipal property that it would be unable to reach by execution after successfully reducing its claim to judgment. For that, in essence, is what defendant's contention amounts to. The striking of defendant's answer was a determination that defendant did not have the right to appropriate the deposit; it is to protect plaintiff's rights in that respect that planitiff is now successfully in court; yet defendant, by the form of the judgment, seeks precisely the advantage that it sought to accomplish by seizing the funds. A judgment creditor may not ham-string a municipality in its governmental functions by taking, under execution, property necessary for public purposes. *Lyon* v. *City of Elizabeth,* 43 *N. J. L.* 158. It seems to be clear that defendant, when it shall have entered its judgment, and issued execution, may not levy upon the public property of the township. In the application of this principle I am unable to distinguish between funds raised by taxation for specific public purposes and chattels

or real property used for such purposes. Fire houses and fire apparatus are of little use without the funds to operate them; likewise, school houses without money to pay teachers and purchase supplies. The practice in this state has uniformly been to issue execution against the municipality, not to seize and sell its public property, but for the pupose of laying a foundation for a *mandamus* proceeding. *Lyon* v. *Elizabeth, supra; Palmer* v. *Freeholders of Essex, 77 N. J. L.* 143; *Friedman* v. *Borough of Waldwick, 8 N. J. Mis. R.* 370. Indeed, on the data before me, it appears that the funds appropriated by the Bank were, in large measure, moneys that were simply passing through the Township, as a tax collecting agency, to other governmental units, including the school district, the county and even the state itself."

The municipalities' general funds are raised by taxation and are allocated before receipt, for particular purposes, including the transmission of taxes to other governmental units. The citizen pays taxes, for the most part, for police, fire protection, and the education of the young. To take moneys intended to be devoted to a continuance of governmental functions cannot be done unless we overlook the purposes for which the funds were dedicated. As soon as there is an unused balance in the general account of a municipality it is placed in a surplus revenue account and may be then used for the purposes contemplated by law. The general funds of a municipality are, in fact, a trust fund to carry on the obligations of government and are, as every banker knows, allocated for particular purposes. The bank can no more take these funds for a purpose for which they were not dedicated than it could take trust funds to pay the debt of the individual who happened to be trustee.

A contrary rule perhaps exists in *Pennsylvania-Georges Township* v. *Union Trust Co.,* 143 *Atl. Rep.* 10, and in the *United States* v. *The Bank of Metropolis,* 15 *Peters* 377. The reasoning in these cases is inapplicable to the municipal needs of this state. The so-called general municipal funds are devoted to particular purposes. Banks lending to municipalities have, as security for their advances, special funds to

be thereafter raised : for improvement notes the proceeds of bonds to be thereafter issued and sold, or assessments to be thereafter levied and collected; for tax revenue notes, the taxes to be thereafter collected. The general funds are recognized as a current means of carrying on the work of the municipality in accordance with the declared purpose for which the moneys were collected.

To give the effect appellant claims for rule 67 of the Supreme Court would, by indirection, accomplish the complete ham-stringing of municipal activity. The court never so intended, nor could it by such action have overruled *Lyon* v. *City of Elizabeth*, 43 *N. J. L.* 158.

The judgment is affirmed.

HEHER, J. (Dissenting.) I am unable to concur in the view expressed by my brethren of the majority.

In the case of *Lyon* v. *City of Elizabeth*, 43 *N. J. L.* 158, cited in the majority opinion, the sheriff levied upon several lots of land owned by the city, by virtue of a writ of *fieri facias* issued upon a judgment recovered against the city. Mr. Justice Van Syckel pointed out that a writ of *fieri facias* against the public property of a municipal corporation is unknown to the common law; that municipal corporations are mere instrumentalities through which the legislature administers the civil policy of the state; that their control of property is intended only for corporate purposes, and is to be applied only to promote the objects for which they are erected into governments; and that the municipality cannot, in the absence of *express legislation*, be deprived of the means indispensible to the exercise of the functions with which it is charged. This is obviously not an analogous case.

Here there was no attempt to seize and sell property necessary for governmental purposes. The relation between a bank and its depositors is that of debtor and creditor. Between persons occupying that relation to each other, set-off at law, under the statute, applies and a bank may set off against a *general* deposit a debt due to it from the depositor. *Roseville Trust Co.* v. *Barney*, 89 *N. J. L.* 550; *Marmon Fanning Co.*

v. *People's National Bank of Elizabeth,* 106 *N. J. Eq.* 170,
173; *Tufts* v. *Peoples Bank and Trust Co.,* 59 *N. J. L.* 380.
It is the general rule that, unless there is something to the
contrary in the statute law, the right of a bank to set off the
deposit of an individual against his debt to the bank would
apply equally where the depositor is a municipal corporation.
2 *Paton's Digest,* 2291.

There is express statutory authority for the course taken by
the bank in the instant case, and the principle enunciated in
the case of *Lyon* v. *City of Elizabeth, supra,* cannot be applied
without emasculating this enactment. Chapter 243 of the
laws of 1927 (*Pamph. L.* 1927, *p.* 459) provides that "when-
ever an action has been or hereafter may be commenced, by
any municipality, in any court of law of this state, against
any person, persons or corporation, it shall be lawful for such
person, persons or corporation having any claim or demand
against the plaintiff to *set up such claim or demand by way
of set-off or counter-claim,* subject to rules, and the same
shall be considered upon the trial of any such action." Rule
67 of the Supreme Court provides that "if the amount found
due on the counter-claim to the defendant exceeds the amount
found due to the plaintiff, the defendant shall have judgment
for the excess." This seems to be the only applicable rule,
adopted by the Supreme Court, touching the procedure in the
event that the counter-claim is sustaind.

In the court below judgment was entered in favor of the
municipality on its complaint, and for the bank on its counter-
claim, and this was declared to be a compliance with the
statute. It is said in justification of this course, that the
bank "did set up its demand by counter-claim, and the
counter-claim was not only considered, but has been allowed
as a substantive cause of action upon which the judgment
should be entered." This construction, it sems to me, ren-
ders the statute nugatory. It stresses and unduly narrows
the meaning of the word "considered," and utterly ignores the
phrase "set up such claim or demand *by way of set-off or
counter-claim.*" Mere consideration of defendant's counter-
claim, without giving effect thereto in the accustomed way,

would be a futile thing, and it is clear the legislature did not intend such a result. The legislative purpose manifestly was to grant the right of set-off in actions brought by municipal corporations. It expressly so provided. The term "set-off," as employed in the statute, must be given its technical significance. It is a demand which a defendant makes against the plaintiff in the suit for the purpose of liquidating the whole or a part of his claim. Set-off, both at law and in equity, is that right which exists between two parties, each of whom, under an independent contract, owes an ascertained amount to the other, to set off their respective debts by way of mutual deductions, so that, in any action brought for the larger debt, the residue only, after such deductions, shall be recovered. 24 *R. C. L.* 792. Technical words or phrases in a statute are presumed to have been used by the legislature in a technical sense. *United States* v. *Paterson,* 150 *U. S.* 65; 14 *Sup. Ct.* 20; 37 *L. Ed.* 999. One of the established rules of construction is that statutes should have a rational, sensible construction, if their meaning is at all doubtful. Significance and effect shall, if possible, be accorded to every sentence, clause, word or part of the act. *Bogert* v. *Hackensack Water Co.,* 101 *N. J. L.* 518; 129 *Atl. Rep.* 138; *Shack* v. *Dickenhorst,* 99 *N. J. L.* 120; 122 *Atl. Rep.* 436; *D. Ginsberg & Sons, Inc.,* v. *Popkin,* 285 *U. S.* 204; 52 *Sup. Ct.* 322; 76 *L. Ed.* 704. That construction is favored which will render every provision operative, rather than one which would make some of its provisions idle or nugatory. *Jones* v. *York County, Nebraska,* 47 *Fed. Rep.* (2d) 837. When a statute is plain and unambiguous in its terms, and not susceptible of more than one construction, courts are not concerned with the consequences that may result therefrom, but must enforce the law as they find it. 25 *R. C. L.* 1017. Entering judgments in favor of the plaintiff and counter-claimant upon their respective claims, and awarding execution to the former, while staying the hand of the latter, constitute, manifestly, a denial of the right of set off. This course, in the instant case, deprives the bank of a substantial right conferred by the statute.

The fund charged with the balance due on the note was deposited in the township treasurer's general account. The municipality contends that this account contained moneys received to meet the township's appropriations for 1932, to pay county, state, local school and fire taxes, and could not be taken for any purpose other than that for which it was appropriated. The majority opinion holds that the moneys deposited in this account constitute, in reality, a trust fund into which the current revenues are placed for disposition in accordance with the appropriations previously made. But the proofs do not disclose this to be the fact. In any event, the fund was not earmarked. It was a general deposit to the credit of the treasurer. They were not allocated to any special use or purpose. There is no presumption of a prior appropriation of the fund, in whole or in part. If the presumption be indulged that this fund was set apart to meet current obligations of the township, the unpaid indebtedness to the bank could not reasonably be excluded from that classification. The moneys were borrowed for a specified period of time. The municipality unconditionally promised to repay these moneys at the time indicated, and payment would ordinarily be made from its general fund not specifically appropriated to particular uses. And a failure to pay at the appointed time would impair its credit.

In *Georges Township* v. *Union Trust Co.*, 293 *Pa.* 364; 143 *Atl. Rep.* 10, a case presenting this precise question, the Pennsylvania Supreme Court rejected a like claim of the municipality. It was held that if the money so deposited "was intended to be an earmarked fund for a designated township use, the bank should be notified," and that the mere fact that the statute individuated "the purposes for which taxes are collected (road, lighting, building, townhouse, and lockup) would not charge the bank with notice, nor earmark a fund deposited with it, as other sections indicate that the deposit might have been to meet debts that were due, including the notes in question." Continuing Mr. Justice Kephart said: "While expenditures for purposes within the taxing section should not exceed the gross sum produced from

the millage laid for that purpose, this fact would not be sufficient to charge the bank with notice, unless there had been a specific separation or appropriation of deposits in the bank. Municipal money from all sources is usually deposited in a general account, and is used indiscriminately by the treasurer to apply to orders or demands for all purposes. The responsibility for the proper distribution and disbursement under any budget system must rest on the authorities who control and pay it out. These officers or their bondsmen must answer for any misapplication of funds, unless there is knowledge in the one receiving them as to an illegal appropriation. Tradesmen, workmen, or employes dealing with township authorities for matters ordinarily within current expenses are not charged with the duty of ascertaining whether there is an appropriation to cover the service or whether they are being paid from the proper appropriation." He laid down the rule that funds so deposited are not appropriated in the hands of the bank, and that the bank takes them without responsibility as to appropriations made by the taxing authorities, and "may treat this fund as any other fund, and charge it with a municipal order in its possession for collection in the same manner as it may charge an individual or corporation." He concluded thus: "Considering the thousands of orders that are so issued, it would impose too much burden on the banks and destroy the flexibility of this character of exchange if they were required to hunt up the treasurer and secure a check or authority from him to honor each one, depending on the accounts as they may or may not be shown by his books. If there should be any doubt as to the propriety of any charge, or the rule here laid down, the treasurer may guard against it by restricting the deposit in the bank to certain appropriations made by the supervisors."

In *The United States* v. *Bank of the Metropolis,* 15 *Peters* 377; 10 *L. Ed.* 774, the Federal Supreme Court held that the United States, when it becomes a party to negotiable paper, has all the rights and incurs all the responsibliities of individual parties to such instruments. The principle there applied governs with equal force here. I quote from the opinion:

"When the United States, by its authorized officer, become a party to negotiable paper, they have all the rights and incur all the responsibility of individuals who are parties to such instrument. We know of no difference, except that the United States cannot be sued. But if the United States sue, and a defendant holds its negotiable paper, the amount of it may be claimed as a credit, if, after being presented, it has been disallowed by the accounting òfficers of the treasury, and if the liability of the United States upon it be not discharged by some of those causes which discharge a party to commercial paper, it should be allowed by a jury as a credit against the debt claimed by the United States. * * * It [the Supreme Court] said, in the case of *The United States* v. *Dunn*, 6 *Peters* 51, 'the liability of parties to a bill of exchange, or promissory note, has been fixed on certain principles which are essential to the credit and circulation of such paper. These principles originated in the convenience of commercial transactions, and cannot now be departed from.' From the daily and unavoidable use of commercial paper by the United States, they are as much interested as the community at large can be in maintaining these principles."

I do not agree that this rule runs counter to sound public policy. On the contrary, it seems to me public policy is served by compelling borrowers from banks to meet their obligations. There is no reason on principle why the bank should not be given the right of set-off as to funds not appropriated to a specified use or purpose. If moneys are so appropriated, or held by the municipality in trust, they may be earmarked. They do not then partake of the character of general funds against which the usual right of set-off exists. I am strongly of the opinion that the practical effect of the rule laid down in the majority opinion will be to impair the credit of municipalities, for banks will not, under such conditions, advance money to municipalities in times of need. If a municipality is to be so favored as a debtor, and is not held to the same degree of responsibility, in discharging its contractual obligations, as an individual, its credit will be seriously impaired, if not destroyed. It is, of course, im-

portant that our municipalities function, but it is also essential that banks be maintained in a state of liquidity commensurate with the requirements of safety. The municipality has the taxing power, and its officers are charged with the responsibility of raising by taxation the moneys necessary to defray the cost of government.

Judge Van Buskirk and Judge Hetfield have authorized me to express their concurrence in the views herein stated.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, BODINE, DONGES, KAYS, DEAR, WELLS, JJ. 9.

*For reversal*—HEHER, VAN BUSKIRK, HETFIELD, JJ. 3.