DALEY v. CITY OF MELVINDALE.

1. BANKS AND BANKING—TRUST FUNDS—DESIGNATION OF DEPOSITS—WITHDRAWALS.

Mere designation of a bank deposit by a certain name is insufficient, of itself, to characterize it as a trust fund, or to put the bank on notice that the deposit so designated, but without any agreement or conditions attached as to withdrawal, may be withdrawn only for a specific purpose.

2. MUNICIPAL CORPORATIONS—BANKS AND BANKING—SET-OFF.

The general bank account of a municipality is a trust fund into which current revenues are placed for disposition in accordance with appropriations previously made and bank cannot set off against such account a municipal obligation held by it.

3. SAME—TAXATION—SET-OFF.

Creditors of a municipality must wait until their debts are raised by taxation and cannot set off municipal obligations they may hold against their taxes.

4. BANKS AND BANKING—MUNICIPAL CORPORATIONS—SET-OFF—EXE-
CUTION.

    In suit by receiver of bank, a depositary of a municipal corpora-
tion, to enforce set-off of bonds, some of which were past due,
against demand deposits, denial of right of set-off *held*,
proper, since to hold otherwise would be, in effect, seizure of
municipal property, as if by attachment, garnishment or execu-
tion, which seizure is prohibited by statute (3 Comp. Laws
1929, § 14690).

5. EQUITY—MAXIMS.

    Equity as a rule will follow the law, and will not permit that to
be done. by indirection which, because of public policy, cannot
be done directly.

6. SAME—SET-OFF—MUNICIPAL BONDS—DEMAND DEPOSITS.

    Right of set-off against municipal deposits is denied in suit in
equity by depositary bank which holds past due municipal
bonds, where there is no showing municipality is insolvent and
there is method provided by statute for enforcing payment of
bonds (3 Comp. Laws 1929, § 14690).

    POTTER, C. J., and WEIST and EDWARD M. SHARPE, JJ., dissent-
ing.

Appeal from Wayne; Moll (Lester S.), J. Sub-
mitted January 24, 1935. (Docket No. 110, Calendar
No. 38,106.) Decided May 17, 1935. Rehearing de-
nied June 19, 1935.

Bill by John N. Daley, receiver of Melvindale
State Bank, against City of Melvindale and Dear-
born State Bank, to restrain a mandamus action and
to allow a set-off and other relief. From decree de-
nying right of set-off, plaintiff appeals. Affirmed.

*Marion Louis Leacock* (*M. Hubert O'Brien*, of
counsel), for plaintiff.

*R. S. Woodliff* (*M. M. Larmonth*, of counsel), for
defendants.

BUTZEL, J. The decree of the trial court should be
affirmed. It is true that the mere designation of a

bank deposit by a certain name is insufficient, of itself, to characterize it as a trust fund, or to put the bank on notice that the deposit so designated, but without any agreement or conditions attached as to withdrawal, may be withdrawn only for a specific purpose. Nevertheless the Melvindale State Bank must have known that the funds deposited with it by the village (now the city of Melvindale) were public funds, raised in manner provided by law, and dedicated and allocated by the village to particular governmental functions. The sole question presented in the instant case is limited to whether a bank as plaintiff in a court of equity is entitled to set off bonds of the municipality against public funds deposited with it by the municipality. There are cases cited in which set-off has been allowed under different facts than those presented in the case at bar. In many of these decisions the right to set-off is apparently based upon some statutory provision. *United States* v. *Bank of Metropolis,* 15 Pet. (40 U. S.) 377; *Board of Drainage Com'rs of McCracken County* v. *City National Bank of Paducah,* 231 Ky. 670 (33 S. W. [2d] 94); *Hemphill* v. *Florida National Bank of Jacksonville,* 30 Fed. (2d) 892. However, in other cases set-off has been allowed even without statutory authority. Such is the rule in Pennsylvania and a few other jurisdictions. See *Georges Township* v. *Union Trust Co.,* 293 Pa. 364 (143 Atl. 10); *Gray* v. *School District of Brownsville* (C. C. A.), 67 Fed. (2d) 141, a case following the decisions of Pennsylvania, in which it arose. Also, see, *State, ex rel. Village of Warrensville Heights,* v. *Fulton,* 128 Ohio St. 192 (190 N. E. 383). In two early Michigan cases a set-off was allowed under different conditions than here presented. *McBrian* v. *City of Grand Rapids,* 56 Mich. 95, and *City of Eaton Rapids* v. *Houpt,* 63 Mich. 371, which followed the *McBrian*

*Case,* and in which a mere $7 claim of a pound-master was involved. In neither of these cases, nor in others cited by plaintiff, does it appear that the questions hereinafter discussed were raised.

Despite the authorities above noted, we believe that the correct rule is stated in *Piscataway Township* v. *First National Bank of Dunellen,* 111 N. J. Law, 412 (168 Atl. 757; 90 A. L. R. 423), where, in its majority opinion, the court said:

"The general account of a municipality is unlike an individual's general balance, which the banker may apply on any overdue note. It is, in reality a trust fund into which the current revenues are placed for disposition in accordance with the appropriations previously made. The safety and health of the citizen are of prime importance, and neither can be endangered because a creditor wants his due. The municipality can no more carry on without its general funds than it could without any other particular piece of property dedicated to public use. The creditors of a municipality must wait till their debt is raised by taxation. *Lyon* v. *City of Elizabeth,* 43 N. J. Law, 158. * * *

"The municipalities' general funds are raised by taxation and are allocated before receipt, for particular purposes, including the transmission of taxes to other governmental units. The citizen pays taxes, for the most part, for police, fire protection, and the education of the young. To take moneys intended to be devoted to a continuance of governmental functions cannot be done unless we overlook the purposes for which the funds were dedicated. As soon as there is an unused balance in the general account of a municipality it is placed in a surplus revenue account and may be then used for the purposes contemplated by law. The general funds of a municipality are, in fact, a trust fund to carry on the obligations of government and are, as every banker

knows, allocated for particular purposes. The bank can no more take these funds for a purpose for which they were not dedicated than it could take trust funds to pay the debt of the individual who happened to be trustee."

The courts have almost uniformly held that one cannot set off against his tax obligation an indebtedness due to him from the State or municipality, for the reason that such set-off, if allowed, might result in the suspension of the proper functioning of government. A long list of authorities to this effect is assembled in 90 A. L. R. 433. An interesting statement, particularly pertinent to contemporary times, appears in *City of Camden* v. *Allen* (1857), 26 N. J. Law, 398, where the court said:

"Can the multitude of creditors of our local municipal corporations set-off the debts due from the town or city against their taxes? The question relates not to the technical form of making the set-off; but, as a matter of principle and sound policy, could the claim be tolerated? How is government to be maintained upon such theory? It is not improbable that at this hour many of our municipal corporations are indebted to their own citizens, in amounts far exceeding the annual tax which, by their charters, they are authorized to levy."

When the treasurer of a municipality collects taxes, he obviously does not hold the money in specie in a vault, but deposits it in a bank, to be expended on proper vouchers for the purpose for which it was collected. The same public policy which requires the denial of the right of set-off against taxes because of the danger of interruption of the functioning of government, applies with equal force to moneys collected from taxes for the very purpose of carrying on government.

Furthermore, to permit such a set-off as is sought in the instant case would be in effect to countenance, in an indirect manner, the seizure of the property of the village or city in a similar manner as if by attachment, garnishment or execution. The cases are almost unanimous in holding that the funds of a municipality are exempt from levy by execution. See annotations in 89 A. L. R. 864. An execution may not be levied on a judgment against a municipality. Section 14690, 3 Comp. Laws 1929. Also, see, *Griswold* v. *Common Council of Ludington,* 117 Mich. 317; *Herter* v. *City of Detroit,* 243 Mich. 66.

Equity as a rule will follow the law, and will not permit that to be done by indirection which, because of public policy, cannot be done directly. A municipal corporation is much restricted in raising the necessary funds with which to operate. Such funds are generally raised by taxes and/or bond issues, both of which are expressly limited in amount by law. In the preparation of the budget the amounts to be raised are generally pared down, within these limits, to a minimum just sufficient to provide for the bare necessities of governmental privileges and protection—police, fire and health protection, school maintenance, debt service, etc.,—and the funds to be thus raised are allocated, before their receipt, to these necessary governmental functions. The municipality would be seriously embarrassed in the carrying on of its vital functions, if the bank in which the funds are deposited to await expenditure for the particular purposes for which they were collected were permitted to divert them to the satisfaction of its own claims. There is no claim that the city of Melvindale is insolvent, and there is a proper orderly method of enforcing payment of the amounts due on the bonds of the municipality, which

avoids the seizure of funds raised and required for other purposes.

The decree of the trial court is affirmed, without costs, as a public question is involved.

NELSON SHARPE, NORTH, FEAD, and BUSHNELL, JJ., concurred with BUTZEL, J.

EDWARD M. SHARPE, J. (*dissenting*). The city of Melvindale is the legal successor of the village of Melvindale and became so as of February 6, 1933, and as such opened five different bank accounts in the Melvindale State Bank. The bank for the purpose of qualifying as a depository had on October 28, 1931, entered into a depository agreement with the village of Melvindale and by such agreement the Dearborn State Bank was made trustee.

The provisions of the agreement pertinent to the issue involved herein are as follows:

"The above bank agrees to receive and safely keep all such surplus funds of said depositor as may be offered or deposited by it and to reimburse and pay the same to said depositor or whoever may be lawfully entitled to receive the same in accordance with the terms of the contract of deposit; and to pay interest on such surplus funds so deposited, at the rate of no interest per cent. per annum, to be computed in the following manner:  *  *  *

"It is agreed by and between the depositor and bank that the said bank shall, at all times keep a true and just account of all moneys and funds deposited by the said depositor and that the said bank shall, at all times honor and pay all drafts and checks of said depositor to the amount of funds so deposited as aforesaid.

"The said bank hereby deposits with the above trustee as collateral security for the safety and payment of all money and funds belonging to the de-

positor in accordance with this agreement, securities enumerated in paragraphs (a), (b), (c), (d), (e), (f), (g), (h), and (i) of section 24 of Act No. 6, Pub. Acts 1929, and further enumerated in the attached schedule, the securities so pledged being assets of its commercial department. The bank hereby agrees to deposit securities in the amount, computed at their market value, of at least 10 per cent. more than the amount deposited by said depositor. In case of any default on the part of the bank, the depositor shall hereby be given full power and authority to direct the trustee under such depository agreement to sell the securities deposited thereunder, or as much thereof as may be necessary to realize the full amount plus interest, due the depositor, plus the expense of sale, and to pay and return any surplus to the bank, its assigns, or anyone succeeding to its legal rights. Said securities may be sold at public or private sale in the discretion of the trustee, without advertising the same or giving notice to said bank. The bank may from time to time during the period of its designation, with the written consent of the depositor, deposit additional collateral securities and make withdrawals of excess securities, or substitute other securities for those on deposit, or any part thereof. Authority is hereby vested in the trustee to return the collateral securities to the bank when the trust so created shall terminate, and in the case of a reduction of the deposit, the bank shall be permitted to withdraw the excess portion of such collateral securities with the written consent of the depositor. All interest on the collateral so deposited when collected shall be paid to the bank so long as it is not in default."

Under this agreement, the village of Melvindale had on deposit with the bank balances in five accounts amounting to $17,941.08, as of February 11, 1933, the date of the Michigan banking holiday, after which this bank never reopened for business.

This amount was deposited in five separate funds as follows:

"Village of Melvindale—general account
—commercial ledger ................$ 1,271.01
Village of Melvindale—welfare account
—commercial ledger ................  4,567.04
Village of Melvindale—special water tap
fund—Savings No. 354 ..............    692.44
Village of Melvindale—sinking fund—
Savings No. 355 ...................  6,775.67
Village of Melvindale—general account
—Savings ledger No. 1048 ..........  4,634.92
                                    _____
                                    $17,941.08"

In June, 1933, the city of Melvindale made a written demand on the Dearborn State Bank to have that bank sell the list of securities pledged by the Melvindale State Bank under the depository agreement and to apply the proceeds of the sale toward the payment of the said city of Melvindale deposits.

Previous to the closing of the Melvindale State Bank, the city of Melvindale had issued approximately $20,000 worth of bonds at par value, title to which was held by the Melvindale State Bank. One group of these bonds consisted of $13,000 par value and constituted a portion of the securities pledged under the depository agreement, while another group of bonds amounting to $7,000 par value was held by the Dearborn State Bank as collateral security to bills payable by the Melvindale State Bank. In the $13,000 group, four of the bonds matured October 15, 1932, five on September 1, 1933, and five August 1, 1959. All of the bonds of the $7,000 group matured October 15, 1931, and with the exception of $5,000 sewer bonds, all of the bonds in both groups were special assessment bonds, but containing a clause making them general obligations of the vil-

lage of Melvindale by its commission without vote of the people.

Upon demand, the Dearborn State Bank refused to sell the securities pledged under the depository agreement and the city of Melvindale began a mandamus action to compel the defendant Dearborn State Bank so to do. The Melvindale State Bank then filed a bill in chancery seeking to enforce a right of set-off. Both cases were heard together by the trial judge and resulted in a decree in favor of the city of Melvindale, from which decree plaintiff appeals.

The principal question involved in this case is the right of plaintiff, as receiver of the Melvindale State Bank, to set off the $20,000 of Melvindale village bonds against the depository liability of the Melvindale State Bank to the city of Melvindale in the amount of its deposits aggregating $17,041.09.

The authority for the furnishing of security by depositories of public funds may be found in Act No. 22, Pub. Acts 1931. This act provides that cities, counties, townships, villages, school districts and other political subdivisions may enter into depository agreements under which collateral securities are deposited in lieu of surety bonds for the protection and security of public moneys. The act also provides that such agreements shall be approved as to form by the State banking commissioner.

The city of Melvindale contends that the money deposited in the Melvindale State Bank was raised and allocated for certain definite municipal purposes and may not be diverted for the payment of other municipal obligations; it cites as authority for its position *Griswold* v. *Common Council of Ludington*, 117 Mich. 317, and *Herter* v. *City of Detroit*, 243 Mich. 66. But from an examination of these

cases we find that the court held that the proper way to collect a judgment against a city was to proceed in the way provided by statute. No question of set-off was involved in either of these cases.

While the case at bar is one of first impression in this State, we find from an examination of cases in our court as well as other State courts and text-books that certain principles have been laid down which are helpful to a determination of the matter in issue. In the case at bar, the depository agreement is silent upon whether or not the deposits referred to therein are special or general, but "the relationship between the bank and the depositor must be determined by the terms of the deposit agreement." 5 Michie, Banks and Banking, p. 21.

In *Reichert* v. *Plymouth United Savings Bank,* 269 Mich. 136, we held that "where public funds are deposited in a bank by a county treasurer to his credit as such, without anything to establish it as a special deposit other than the bank's knowledge that the funds deposited are public funds, the deposit is a general deposit, the bank becomes indebted to him just as it does to any other fiduciary who deposits fiduciary funds therein, and he is entitled to no priority of payment because of the public character of the funds."

The State having no prerogative right to preference, its subdivisions have none.

In *Borgess Hospital* v. *Trust & Savings Bank,* 265 Mich. 156, this court said:

"In order to justify the designation of an account as a special deposit, not only its special purpose must be shown, but also an intention on the part of both parties that it must be held and used exclusively for such purposes" (citing *Craig* v. *Bank of Granby,* 210 Mo. App. 334 [238 S. W. 507]).

"While there have been some fine spun distinctions drawn in a number of decisions in other jurisdictions that give certain accounts a preferred position as special deposits, we believe that the better authority is to the effect that a deposit will not be regarded as special unless made for a special purpose and with the understanding that it is to be set aside solely for that purpose and not mingled with other moneys of the bank."

The trust fund theory of municipal deposits, in the case at bar, is untenable because it is in conflict with the purpose and aim of posting security for the deposits. If the deposits are treated as trust funds, which must be kept intact and not mingled with the bank's general deposits, then no benefit could be derived by posting security for such deposits. Consequently, the issue is narrowed to the question of whether a general deposit may be off-set by a general indebtedness of the depositor segregated by the owner thereof for the purpose of guaranteeing full payment of the deposit.

In *Scott* v. *Armstrong,* 146 U. S. 499 (13 Sup. Ct. 148), cited in *Thompson* v. *Union Trust Co.,* 130 Mich. 508, 511 (97 Am. St. Rep. 494), the court said, "The right to assert set-off  *  *  *  is of statutory creation, but courts of equity from a very early day were accustomed to grant relief in that regard independently as well as in aid of statutes upon the subject."

In *Stone* v. *Dodge,* 96 Mich. 514, 515 (21 L. R. A. 280), this court said, "It is well settled that, in a suit by a receiver of an insolvent bank upon a note or obligation due the bank, the defendant will be allowed to set off his deposit or a certificate of deposit held by him at the time of the suspension of the bank." And such right of set-off exists whether or not the depositor's securities have matured

(*State Banking Com'r* v. *E. Jossman State Bank,* 185 Mich. 24 [Ann. Cas. 1917 C, 1203]), also deposits in a bank may be set-off although depositor's debt to the bank is secured by collateral (*Reichert* v. *Farmers' & Workingmen's Savings Bank,* 257 Mich. 500 [81 A. L. R. 1461]).

"It is the rule that demands to be the subject of set-off must be mutual between the parties; that is to say, the demands must be due to and from the same parties in the same capacity, and be of such a nature that, had the defendant sued upon the set-off claimed, the plaintiff could claim his cause of action in that suit as a set-off." *Johnson* v. *City of Aberdeen,* 147 Wash. 482, 485 (266 Pac. 707).

In *Georges Township* v. *Union Trust Co.,* 293 Pa. 364 (143 Atl. 10), the township sued to recover from defendant bank a deposit in the name of Georges township road supervisors. The bank sought to set off indebtedness incurred by the township for its corporate use and purposes—to repair and improve roads. It was there said:

"Municipal money from all sources is usually deposited in a general account, and is used indiscriminately by the treasurer to apply to orders or demands for all purposes. The responsibility for the proper distribution and disbursement under any budget system must rest on the authorities who control and pay it out. These officers or their bondsmen must answer for any misapplication of funds, unless there is knowledge in the one receiving them as to an illegal appropriation. Tradesmen, workmen, or employees dealing with township authorities for matters ordinarily within current expenses are not charged with the duty of ascertaining whether there is an appropriation to cover the service or whether they are being paid from the proper appropriation. Appropriations are made on the township books by the distributing and accounting

officers; this is indicated by section 420, which requires an estimate of possible expenses. Therefore, funds deposited here, *qua* funds, are not appropriated in the hands of the bank, and the bank takes them without responsibility as to appropriation made by the taxing authorities. The former may treat this fund as any other fund, and charge it with a municipal order in its possession for collection in the same manner as it may charge an individual or corporation.''

In *Johnson* v. *Aberdeen, supra,* the city had a general deposit account, subject at all times to check, which was made up of funds collected for various purposes, *i. e.,* local improvement, library, etc. The bank held current expense warrants. The funds on deposit were not all funds which the city had collected for the payment of such warrants. Plaintiff sued for payment of warrants, the city claimed a right of set-off and the court said:

''It is argued that these facts show a want of mutuality and deny to the city the right of set-off, except perhaps to the extent that the money held by the bank was payable on current expense warrants. But we cannot think this a matter of concern to the bank, or to its successor in interest. As between the bank and the city the demands were mutual. It may be that the city had wrongfully commingled the funds, but this, while it may have changed the form of the obligation due from the city to the payees of the special funds, in no way affected the relations between the bank and the city. The bank's obligation was to repay the money to the city, or so pay it to such persons as the city should direct, and no rule of law or principle of equity will permit it to plead the city's dereliction of duty to another to escape the obligation. To say that it is not liable to the city for this reason is to say that it itself owed the duty to pay the money to

the *cestui que trustent* of the city, but the obligation it assumed when it became the city's depositary does not go to this extent. It is fully protected when it returns the money to the city.''

In *United States* v. *Bank of Metropolis,* 15 Pet. (40 U. S.) 377, 392, the supreme court of the United States said:

''When the United States, by its authorized officer, become a party to negotiable paper, they have all the rights, and incur all the responsibility of individuals who are parties to such instruments. We know no difference, except that the United States cannot be sued. But if the United States sue, and the defendant holds its negotiable paper, the amount of it may be claimed as a credit, if, after being presented, it has been disallowed by the accounting officers of the treasury; and if the liability of the United States upon it be not discharged by some of those causes which discharge a party to commercial paper, it should be allowed by a jury, as a credit against the debt claimed by the United States.''

In *State, ex rel. Village of Warrensville Heights,* v. *Fulton,* 128 Ohio St. 192 (190 N. E. 383), it was held that:

''The trust company was entitled to apply the deposit of relator in part satisfaction of the past due obligations which the relator owed it. The funds of relator were no more sacred than those of any other depositor.''

The following cases hold that a deposit of a drainage district may be off-set against the indebtedness of said drainage district: *Hemphill* v. *Florida National Bank of Jacksonville* (*C. C. A.*), 30 Fed. (2d) 892; *Board of Drainage Com'rs of McCracken County* v. *City National Bank of Paducah,* 231 Ky. 670 (22 S. W. [2d] 94).

In the case at bar, we find that prior to entering into the depository agreement, the Melvindale State Bank owned $13,000 worth of the city of Melvindale bonds. The bank had the right to hypothecate them for the purpose of the depository agreement, and they may now be set off as against the deposits of the city of Melvindale in the Melvindale State Bank. But as to the $7,000 worth of city of Melvindale bonds, we find that these bonds were assigned to the Dearborn State Bank as collateral security for an indebtedness owing to the Dearborn State Bank. We must therefore hold that while these bonds may be set-off as against the city of Melvindale bank deposits, yet such set-off is subject to the rights and interest of the Dearborn State Bank.

The cause should be referred to the circuit court of Wayne county to enter a decree in conformity with this opinion. Plaintiff should have costs as against the city of Melvindale.

POTTER, C. J., and WIEST, J., concurred with ED-WARD M. SHARPE, J.