THE STATE, EX REL. CLAUDIA LEA PHELPS, AS EXECUTRIX OF AND TRUSTEE UNDER THE LAST WILL AND TESTAMENT OF SHEFFIELD PHELPS, DECEASED, ET AL., RELATORS, v. THE BOROUGH OF FORT LEE, IN THE COUNTY OF BERGEN, A MUNICIPAL CORPORATION, ET AL., DEFENDANTS.

Argued May 5, 1936—Decided December 15, 1936.

Before Justices BODINE and HEHER.

For the relators, *Wurts & Plympton*.

For the municipal finance commission, *William A. Stevens*.

For the borough of Fort Lee, *Lawrence A. Cavinato*.

For the trustees, intervenors, *Warren Dixon*.

For Ambrose E. Vanderpoel, intervenor, *Reed & Reynolds*.

For Sarah W. Girdwood et al., intervenors, *Harrison & Roche*.

For Charles P. Rogers, receiver, etc., intervenor, *Harrison & Roche*.

BODINE, J.  On December 1st, 1932, the First National Bank of Fort Lee, then engaged in business, lent to the borough of Fort Lee the sum of $40,000, upon tax revenue notes of that date, due March 1st, 1933, issued against delinquent taxes for 1931.  There is now due thereon the sum of $36,857.16 and interest at six per cent.  On the same day, the bank lent to the borough the sum of $65,000 on two tax anticipation notes due March 1st, 1933.  There is due on these notes the principal sum of $60,000 with interest at six per cent.  Since these two notes matured after December 31st, 1932, they are to be treated under the law as tax revenue notes.

On October 14th, 1935, at the behest of a number of persons, holders of bond obligations of the borough of Fort Lee, an alternative writ of *mandamus* was issued requiring the borough to show cause why it should not include in the amount to be assessed, levied and collected by taxation for the year 1936, money sufficient to pay the sum found to be due by the municipal finance commission as in default on April 30th, 1935, with interest.  The return sets forth that the municipal finance commission functioning in said munici-

pality, pursuant to chapter 330 (*Pamph. L.* 1931, *p.* 815; *N. J. Stat. Annual* 1931, § 48-*110), has found the borough is in default in the sum of $1,562,567.16 for principal upon its obligations, and $498,236.90, accrued interest. The bonds and notes specified in the writs are admitted to be outstanding obligations. It is stated in the return that the total amount, which is possible to raise for the year 1936 by taxation, is approximately $645,000; that it will be possible to collect and raise available moneys in that year in the sum of $681,369.89 of which it is estimated $585,069.89 will be raised by the collection of taxes and approximately $96,200 from miscellaneous revenues; that of the expected sum of $681,369.89, $183,000 must be paid on account of local school taxes; $44,000 must be paid on account of state taxes for the year 1936, and $100,050 must be paid on account of county taxes for the year 1936, leaving a balance available for municipal purposes of $354,070, of which $185,000 is necessary for current economic operating expenses of the borough, and $165,586.86 for debt service; that under the proposed tax levy with other expected receipts there will result funds for a possible payment to or on account of bondholders and other creditors in the sum of $225,586.86. The return also shows that there has been accumulated in a reserve trust fund, because no interest has been paid for some years on municipal obligations, the sum of $177,912.04. These moneys, together with the funds to be realized from current and delinquent taxes, are available for equal and ratable payments on account of interest indebtedness, if preference or priority claims shall not prevail.

The borough sought that it might set aside a reserve for delinquent taxes of not less than $64,000 and an appropriation for debt service of not less than $165,586.86, and such other additional amounts as will increase the tax levy for the year 1936 to an amount not less than $645,000 and not more than $655,000, which after expense of collection will leave a balance of not less than $131,586.86 for payment *pro rata* on the amount of the indebtedness of the borough.

John Kenlon and Lester C. Burdett, trustees for creditors and depositors of the First National Bank of Fort Lee and

holders of the notes in question having intervened in the proceedings, demurred to the return stating: "1. By force of the statute in such case made and provided, these intervening petitioners are entitled to priority of payment ahead of general obligations of the borough of Fort Lee as in said alternative writ of *mandamus* stated. 2. By force of the statute in such case made and provided, the tax revenue note and the tax anticipation notes held by these intervening petitioners are prior obligations of the borough of Fort Lee ahead of its other outstanding obligations and the tax revenue note held by these intervening petitioners issued against delinquent tax revenues of 1931 is entitled to payment out of the revenues received by the borough for said year or out of such funds as are in the hands of the borough in priority to other obligations of the borough and the tax anticipation notes held by these intervening petitioners are entitled to priority of payment out of the revenues received by the said borough for the year 1932 against which anticipated revenues the said notes were issued, or out of such funds as are in the hands of the borough in priority to its other obligations. 3. By force of the statute in such case made and provided, the borough of Fort Lee and the municipal finance commission was legally obligated to provide in the budget of the borough of Fort Lee for the year 1935, an appropriation for the payment of the said note ahead of and in priority to the other obligations of the said borough, and the said borough and the said commission were legally obligated to pay the said note before the end of the year 1935, and these intervening petitioners are entitled to payment of said note ahead of other obligations of the borough out of such moneys as are now in the possession of said borough. 4. By force of the statute in such case made and provided, these intervening petitioners are entitled to a provision to be made by the borough of Fort Lee and the municipal finance commission in the budget of the said borough for the year 1936 for the payment of the tax anticipation notes held by these intervening petitioners issued against anticipated revenues for the year 1932, and are entitled to payment of the said tax anticipation notes before the end of the year 1936, ahead of and in priority to the other obligations of the borough."

This court issued a peremptory writ directing the borough to include in its tax levy for the year 1936 the sum of $132,000 for debt service, reserving until now the decision on the demurrer of the intervening trustees, as to whether the $132,000 to be reserved for debt service should be paid to all relators and intervenors *pro rata* and all other creditors of the municipality, or whether the trustees were entitled to have full payments of their obligations.

It is the contention of the trustees, the holders of the obligations sold to the Fort Lee bank, that there are funds sufficient to retire their notes, but if not that they are entitled to priority of payment from the moneys appropriated for debt service ahead of the general bond creditors of the borough.

Fort Lee was incorporated as a borough in 1904 (*Pamph. L., p.* 398), and is governed by the general act relating to boroughs. *Pamph. L.* 1897, *p.* 285. Under section 32 of that act, "the council may borrow money temporarily in the name of the borough in anticipation of taxes or assessments, not exceeding three-fourths of such anticipated taxes or assessments."

In 1906 (*Pamph. L., ch.* 315, *p.* 697; 3 *Comp. Stat., p.* 3667), an act was passed permitting boroughs to borrow in anticipation of taxes. Borrowing was limited to ninety per cent. of the taxes for the year, exclusive of county taxes. The act provided that the notes issued in anticipation of taxes were to be paid and satisfied as soon as moneys raised by taxation were in hand. The 1906 act was repealed by *Pamph. L.* 1918, *ch.* 199, *p.* 734. In the meantime, however, chapter 192 of *Pamph. L.* 1917, *p.* 548; (*Cum. Supp. Comp. Stat.,* 1911-1924, *p.* 3345, § *192-14), had been enacted. This act is entitled "An act concerning municipal and county finances." It provides, section 21 (*Cum. Supp. Comp. Stat.* 1911-1924, *p.* 3355, § *192-34, *sec.* 14(a): "In anticipation of the receipt of taxes levied or to be levied, but not delinquent, any municipality or county may, between the beginning of its fiscal year and the day upon which taxes become delinquent of each year, borrow, as hereinafter provided, such moneys as may be necessary to meet its lawful expenditures under appropriations for the year for which such taxes are levied

and for which they will become delinquent." There is a limit of borrowing beyond ninety-five per cent. of the budget to be raised by taxation. It then provides: "the amount of money so borrowed before August first, which is in excess of the amount appropriated for such purpose or purposes, shall be included in the tax levy of the current year and be paid on or before the thirty-first day of December of said current year; and the amount of money so borrowed after August first shall be included in the budget of the following year, and the indebtedness thus incurred shall be paid on or before the thirty-first day of December of the said following year."

Section 22 (*Cum. Supp. Comp. Stat.* 1911-1924, *p.* 3356, § *192-35, *sec.* 22) provides that all such liabilities incurred between the beginning of the fiscal year and the day upon which taxes become delinquent, shall be evidenced by tax anticipation notes or tax anticipation bonds and by no other name, and that such obligations shall mature in the case of municipalities before the eleventh day after the day upon which the taxes become delinquent in the year of issue and shall then be paid and retired; but a municipality may extend the maturity three months longer; provided the tax anticipation notes or bonds shall be credited upon the books of the municipality and charged as tax revenue notes or bonds on the eleventh day after the municipal tax becomes delinquent.

Section 23 (*Cum. Supp. Comp. Stat.* 1911-1924, *p.* 3357, § *192-36, *sec.* 23) permits borrowing to refund tax anticipation notes and bonds, such loans to be evidenced by tax revenue notes or tax revenue bonds. The receipt of all tax returns which are delinquent shall thereafter be set aside and first applied to the retirement of the tax revenue notes or bonds of that year until all notes or bonds are paid. The statute then provides: "Any unpaid balance of the tax revenue notes or bonds of any fiscal year, at the time of making up the tax levy for the third year thereafter, shall be placed in the tax levy of the said third year and retired on or before the last day of the said third year."

Section 24 (*Cum. Supp, Comp. Stat.* 1911-1924, *p.* 3358, § *192-37, *sec.* 24) provides: "If, during the life of any tax revenue note or bond, any municipality shall acquire any

tax title to any real estate included within the tax levy of the fiscal year for which such notes or bonds were issued, the amount of taxes represented by the tax titles so acquired may be withdrawn from tax revenue notes or bonds of that year and funded by the issue of tax title note or notes, bond or bonds, the proceeds of which shall be applied to the retirement of the tax revenue notes or bonds of said year. Such tax title notes or bonds may run until the lien of the tax title is discharged, and shall be retired by the application to that purpose of the principal received in discharge of the lien or liens. The amount of all tax title notes or bonds outstanding shall at no time be greater than the lien value of the tax titles standing in the name of the municipality issuing such notes or bonds."

Section 21 was amended by *Pamph. L.* 1918, *p.* 926 (*Cum. Supp. Comp. Stat.* 1911-1924. *p.* 3355, § *192-34*), so that a municipality was able to borrow but not in excess of fifty per cent. The reason for the change is that prior to that time taxes became delinquent only after a year, but by *Pamph. L.* 1918, *ch.* 236, *p.* 872 (*Cum. Supp. Comp. Stat.* 1911-1924, *p.* 3501, §§ 208-66d, 601, 602) taxes became delinquent, one-half on June 1st and the other half on December 1st.

The legislative purpose seems necessary to enable a municipality to borrow in order to maintain its schools, to pay its police and fire department, and to carry on its other necessary municipal duties, but the legislature wisely limited the capacity to borrow in anticipation of the receipt of taxes beyond the time when the taxes became delinquent.

Section 22 of the original enactment became a part of section 21 under the 1918 amendment, and by that amendment, section 23 of the 1917 act was changed and became section 22 of the 1918 amendment. This section was amended by *Pamph. L.* 1919, *ch.* 178, *p.* 375, and *Pamph. L.* 1921, *ch.* 295, *p.* 855. *Cum. Supp. Comp. Stat.* 1911-1924, *p.* 3356, § *192-35, sec.* 22(a).

In 1921, the last amendment occurred. Section 22, now *Pamph. L.* 1921, *ch.* 295, *p.* 854 (*supra*), so far as pertinent is as follows: "(a) After the first day of June any municipality in anticipation of the receipt of tax revenues for that

year for municipal purposes, for local school purposes and for state and county purposes which are collectible by the collector of the taxing district, may, after any such taxes become delinquent, and to the amount thereof borrow moneys for the purpose of making all payments which may be lawfully made out of the proceeds of such taxes, including the payment of state and county taxes as and when required by law, or to refund its outstanding tax anticipation notes or bonds. * * * (b) All obligations incurred under this section shall be evidenced by the issue of Tax Revenue Notes or Tax Revenue Bonds, and not by the name or in the form of any other instrument whatsoever. Each Tax Revenue Note or Bond, or renewal thereof, shall bear upon its face the statement that it is issued against delinquent tax revenues. * * * (c) After the lawful expenditures under the appropriations for the year have been met, and the Tax Anticipation Notes or Bonds, and the Emergency Notes or Bonds, falling due in the year of issue have been paid or retired, the receipts of all delinquent tax revenues of any fiscal year shall be set aside and applied to the retirement of the Tax Revenue Notes or Bonds of that year, until all notes or bonds issued against the delinquent tax revenues of that year are paid; provided, however, when there are obligations incurred for, or purposes unfulfilled under, the budget appropriations of any year, there may be reserved from the first receipts of delinquent taxes of that year an amount sufficient to pay such obligations or to fulfill such purposes, but in no case shall such receipts be reserved to an amount that is greater than the difference between the delinquent taxes of such year and the revenue notes or bonds outstanding against such delinquent taxes; and provided, further, that if at the time of borrowing, a municipality has power to borrow on tax anticipation notes or bonds, the power to borrow on such notes or bonds shall first be exhausted before it shall borrow on tax revenue notes or bonds. (d) An appropriation for the payment of any unpaid balance of the Tax Revenue Notes or Bonds of any fiscal year shall be included in the budget or the tax ordinance (or resolution) for the fourth year thereafter. All such notes or bonds shall be paid and retired on or before the last day of said fourth year."

The trustees contend that the statute dedicates the revenue received after lawful budgetary appropriations to the payment of their notes and that they are at all events absolutely entitled to payment before the last day of the fourth year.

It is obvious from a reading of the statutes that tax anticipation and revenue notes stand on an entirely different footing from other municipal obligations. A municipality must be able to borrow money to carry on its ordinary business. It cannot wait for the receipt of taxes to pay its firemen, its police force and its school teachers. The legislative purpose is clear throughout the period of thirty-odd years that municipalities are free to pledge tax revenues. That tax anticipation notes and tax revenue notes must be paid promptly is necessary if a municipality is to enjoy this temporary credit. Hence, the provisions of law which make these obligations certain as to time and manner of payment. They are secured by a specific pledge and a definite obligation to raise sufficient funds to secure payments before the end of the fourth year.

Finally, section 24 of *Pamph. L. 1917, ch. 192, p. 560* (*Cum. Supp. Comp. Stat. 1911-1924, p. 3358, § \*192-37, sec. 24*), makes the legislative purpose absolutely clear, since by its terms a municipality is enabled to borrow on tax title notes in order to make payment of tax revenue notes. Clearly, it was the intention that tax anticipation and tax revenue notes should be short time obligations with a pledge of specific revenues, otherwise the municipality could not function or properly set up a budget. The provisions referred to enable the lender to deal with safety with a municipality in temporary distress and enables the municipality to obtain a credit essential for the safety of its inhabitants. Tax revenues not promptly obtained from the citizen may be borrowed on a pledge of his obligation, which is a prior lien upon his property. If money could not be so obtained, the municipality might be unable to function.

The legislature intended that, irrespective of the extent of the municipal bond debt, the municipality should have the right to secure temporary accommodation by the pledge of current tax obligations.

It may well be that the borough has received revenues suf-

ficient, after the payment of other obligations, to pay the notes in full. We do not deem it necessary, however, to pass upon this point, because it is perfectly clear that the revenue notes and the tax anticipation notes are payable out of moneys appropriated for debt service ahead of and in priority to the general obligation of the borough.

The obligations were issued under legislative authority by force of which the holders thereof had a contractual obligation, which entitled them to payment either out of revenues received, but absolutely from taxes to be collected in the fourth year after issue. Possessed of such an obligation no change thereof can be effected by the Municipal Finance Commission act or subsequent legislative enactment. Municipal revenues are dedicated funds and those holding a lien thereon are entitled to payment as the funds are realized. *Piscataway Township* v. *First National Bank of Dunellen,* 111 *N. J. L.* 412; 168 *Atl. Rep.* 757.

In the instant case, the holders of the tax revenue notes are entitled to payment on or before the last day of the fourth year after issue. The intervening petitioners are entitled to a writ of *mandamus* directing the borough to retire their obligations out of the reserve fund which is on hand, or from the appropriations of the 1936 budget for debt service before the end of the current year, and this in priority of the general obligations of the borough.

Let such writ issue.